IGLESIA CATÓLICA, APOSTÓLICA ROMANA, DIÓCESIS DE PONCE, y PEDRO SÁNCHEZ GONZÁLEZ, recurrentes, *v.* EL REGISTRADOR DE LA PROPIEDAD DE GUAYAMA, recurrido.

Núm. 1175.—*Sometido:* Diciembre 6, 1945. *Resuelto:* Enero 31, 1946.

*Miguel Marcos Morales,* abogado de los recurrentes; el registrador recurrido compareció por escrito.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

El ilustre puertorriqueño, don Federico Degetau y González, falleció en esta ciudad el 20 de enero de 1914, bajo testamento abierto otorgado el 4 de septiembre de 1913 ante el notario don Jorge V. Domínguez. Hizo constar en él que era casado con doña Ana Moreno Valarino, que no tenía hijos legítimos ni naturales y, después de hacer varios legados, dispuso en la cláusula séptima de dicho testamento, lo siguiente:

"Que no teniendo herederos forzosos, por ascendencia ni descendencia, de su libre y espontánea voluntad, instituye como tales de todos sus restantes bienes, derechos y acciones, a su referida esposa, Doña Ana Moreno y Valarino y a Don Bonifacio Sánchez y Giménez, en la siguiente forma: sus bienes se dividirán de por mitad entre ambos herederos; el usufructo de todos los inmuebles corresponderá de por mitad a ambos; a la muerte de cualquiera de los dos herederos, se destinará por el superviviente la parte del usufructo del que haya fallecido, a la creación, sostenimiento o fomento de una institución de cultura o beneficencia en esta Isla de Puerto Rico, como una Biblioteca, Museo, Asilo de Niños escrofulosos y raquíticos; creación de una cátedra en el Ateneo de San Juan o a

cualquier otro centro de la misma índole en la Isla, o a cualquier otro objeto y objetos de naturaleza semejante, que el sobreviviente decidiera. La otra mitad del usufructo de dichos bienes inmuebles, a la muerte del otro heredero, tendrá igual o semejante destino.

"Para el cumplimiento del propósito de crear la institución a que se refiere esta cláusula séptima, asigna el testador, especialmente, su colección de pinturas y libros, formada con ese objeto y los terrenos destinados al mismo en Aibonito y encarga y solicita de sus amigos Don Francisco Parra Capó y Don José Tous Soto, de Ponce, Don Manuel Fernández Juncos, Don Antonio Alvarez Nava, Don Emilio del Toro y Don Luis Sánchez Morales, de San Juan, y de los señores James L. Slaidem, Henry Allen Cooper, George Cabot Ward, George F. Moore y William A. Wilbur, que presten su cooperación a la realización de este propósito, al ser solicitados para ello, por sus citados herederos a quienes deja instrucciones para que este encargo no cause erogaciones de modo alguno a dichos señores y para facilitarles, en todo lo posible, la prestación de su cooperación valiosísima."

Doña Ana Moreno Valarino Vda. de Degetau falleció en Madrid, España, el 19 de septiembre de 1918 bajo testamento ológrafo, el cual después del debido procedimiento judicial, fué elevado a escritura pública, habiéndose declarado por dicho acto judicial a don Fernando María Pignet y Moreno, único y universal heredero de la finada.

El 18 de septiembre de 1923 se protocolizaron ante el notario Lic. José Ramírez Santibáñez las operaciones particionales de los bienes relictos al fallecimiento de don Federico Degetau y González, compareciendo don Manuel Fernández Juncos, como apoderado general de don Fernando María Pignet y Moreno, y don Bonifacio Sánchez y Giménez en su propio derecho. En dicha escritura, al referirse a las disposiciones de la cláusula séptima del testamento de don Federico Degetau y González, se hizo constar lo siguiente:

"NOVENA. RENUNCIA DE LA NUDA PROPIEDAD DEL SEÑOR PIGNET— Don Manuel Fernández Juncos, con el carácter que ostenta de apoderado de Don Fernando María Pignet y Moreno, y cumpliendo así mismo instrucciones de aquél, renuncia expresamente a favor de

Don Bonifacio Sánchez y Giménez el derecho de nuda propiedad, que según la interpretación dada al testamento de Don Federico Degetau, habría de corresponder a su señora madre, Doña Ana Moreno, y que por fallecimiento de ésta vendría a recaer en el renunciante, como su único heredero.

"Tal renuncia se hace con el solo fin y propósito de que el expresado Don Bonifacio Sánchez y Giménez adquiera en pleno dominio los bienes que sólo en usufructo parece haberle dejado el causante, Don Federico Degetau; *pero constituye la causa e intención de tal renuncia que los bienes que en virtud de la misma adquiriera el señor Sánchez, como procedentes del señor Pignet, queden en él y se le adjudiquen 'in trust' para cumplir la voluntad y obligaciones impuestas por el causante, Don Federico Degetau, voluntad y obligaciones que delega en él el renunciante, señor Pignet y que constan con toda claridad en la cláusula séptima transcrita del testamento de referencia, debiendo fijarse oportunamente las bases sobre las cuales ha de darse cumplimiento a la creación de las instituciones que dispuso el señor Degetau, con la cooperación de la junta compuesta por los amigos designados por aquél, a fin de realizar el pensamiento humanitario del causante, hasta donde lo permitan la cuantía y situación de tales bienes.* (Bastardillas nuestras.)

"DÉCIMA: RENUNCIA DE LA NUDA PROPIEDAD DEL SEÑOR SÁNCHEZ. —El compareciente, Don Bonifacio Sánchez y Giménez, hace igual renuncia, y a los fines antes indicados de la parte de nuda propiedad que pueda corresponderle por virtud del fallecimiento de la citada Doña Ana Moreno, esposa del señor Degetau.

"* * * * * * * *

"DÉCIMA-CUARTA: HABER DEL CAUSANTE DON FEDERICO DEGETAU —De todo lo anteriormente expuesto resulta que el haber que por todos conceptos correspondía al causante, Don Federico Degetau, pasa a ser de don Bonifacio Sánchez y Giménez en concepto de heredero voluntario de aquél y en la siguiente forma: una mitad en usufructo, y la otra mitad del usufructo y toda la nuda propiedad del expresado haber de dicho causante, *constituye un fideicomiso o 'trust' y así se adjudicará al expresado señor Sánchez Giménez, para cumplir el pensamiento humanitario del testador señor Degetau, según reza su testamento.*" (Bastardillas nuestras.)

La mitad de la finca Rosa Cruz en Aibonito fué adjudicada al Sr. Bonifacio Sánchez y Giménez en esta forma:

"El adjudicatario, señor Sánchez y Giménez, tendrá el usufructo de esta finca, en cuanto a la mitad de la misma, es decir: que podrá disponer libremente, para sí, de la mitad de sus productos y rentas y de su aprovechamiento; pero en cuanto al resto de dichos productos y rentas y toda la nuda propiedad, será considerado como 'Trustee', y deberá dar a los mismos el destino a que se refiere el testamento."

y así fué inscrita en el Registro de la Propiedad de Guayama.

El 17 de abril de 1944 falleció don Bonifacio Sánchez y Giménez bajo testamento abierto otorgado cinco días antes ante el notario don Miguel Marcos Morales en el cual y en relación con la finca Rosa Cruz de Aibonito hizo los siguientes legados:

"Es la voluntad del testador que el resto de la finca de 'Degetau' luego de segregadas de ella las VEINTE CUERDAS para la 'AMERICAN BAPTIST HOME MISSION SOCIETY', de que se dispone en el apartado CUARTO de este testamento, pase a ser de la propiedad del sobrino del testador, don PEDRO SÁNCHEZ GONZÁLEZ, mayor de veintiún años de edad, casado con doña Ramona Espada Roig, agricultor y vecino de Aibonito, como recompensa por su cariño y paciencia en ayudarme y cuidarme con el esmero con que lo ha venido haciendo durante tantos años, y *como caridad para que él pueda ayudar a su* madre *paralítica, residente en España,* y en virtud de haberlo traído el testador, a su sobrino, de España, para que lo cuidara; y además para que el señor SÁNCHEZ GONZÁLEZ *atienda a su esposa y a su hijo;* . . . . (Bastardillas nuestras.)

"*   *   *   *   *   *   *

"SÉPTIMO: Es la voluntad del testador que de la finca de la cual se dejan veinte cuerdas a la 'AMERICAN . BAPTIST HOME MISSION SOCIETY', y del remanente de dicha finca antes de pagar o entregar la parte de la referida finca que se deja en el apartado QUINTO de este testamento a don PEDRO SÁNCHEZ GONZÁLEZ, se segregue una parcela de TRES CUERDAS de terreno, que colinde con los terrenos de la propiedad de Alejandro Irizarry, antes de Dolores y Angela Fournier, y se entregue dicha parcela de terreno, que deberá tener salida a la carretera, a la IGLESIA CATÓLICA APOSTÓLICA ROMANA, Diócesis

de Ponce, representada actualmente por el Excelentísimo e Ilustrísimo Señor Obispo de Ponce, Monseñor Willinger, *para que por el señor Obispo se disponga de esta parcela de terreno en la forma que crea conveniente.''* (Bastardillas nuestras.)

Presentadas en el Registro de la Propiedad de Guayama las escrituras sobre el pago de legados a la Iglesia Católica, Apostólica Romana, Diócesis de Ponce, y a Pedro Sánchez González, el Registrador denegó su inscripción por el fundamento de que ''si bien la finca principal de donde se segrega la parcela adjudicada consta inscrita a favor del testador Bonifacio Sánchez Jiménez, ésta lo está únicamente como heredero usufructuario y fideicomisario (sic) de su causante don Federico Degetau González 'in trust' para darle el destino dispuesto . . . en la cláusula séptima de su testamento . . . y no puede el heredero así instituído . . . disponer de los bienes así dejádosle, para beneficio y lucro de personas o instituciones ajenas a las nombradas por el testador don Federico Degetau González en su citado testamento'' como lo son en este caso los adjudicatarios Pedro Sánchez González y la Iglesia Católica. Hizo constar además el Registrador que tratándose de una lotificación no se había registrado un plano final o preliminar aprobado por la Junta de Planificación, Urbanización y Zonificación de Puerto Rico.

Sostienen los recurrentes que el Registrador erró al interpretar la cláusula séptima del testamento de don Federico Degetau y González ya que el fin último que perseguía el testador era que el usufructo de sus bienes inmuebles se dedicaran ''a un fin cultural o benéfico, en la Isla de Puerto Rico o una institución benéfica o cultural en la Isla de Puerto Rico'' y que no hay quien pueda dudar de que la Iglesia Católica, Apostólica Romana no sea una institución de cultura y beneficencia,[1] y en cuanto al legado hecho a don

---

[1] El abogado de los recurrentes dedica muchas páginas de su muy bien escrito alegato a reseñar, sintéticamente, la historia de la Iglesia Católica en relación con sus obras e instituciones de cultura y beneficencia a través de los siglos.

Pedro Sánchez González para que éste cuide de su madre para-
lítica, se arguye que cumple también con la intención del
testador expresada en la cláusula séptima.

No tienen razón los recurrentes. De acuerdo con el ar-
tículo 20 de la Ley Hipotecaria([2]) el Registrador no erró al
denegar las inscripciones solicitadas en estos casos. Si bien
es cierto que don Bonifacio Sánchez y Giménez tenía inscrita
a su favor la finca Rosa Cruz, dicha inscripción no era una
de dominio sino en concepto de usufructuario de una mitad
de la finca y en cuanto a la otra mitad y toda la nuda pro-
piedad en concepto de fiduciario para cumplir la voluntad
expresada por su causante don Federico Degetau y Gonzá-
lez en la cláusula séptima de su testamento.

Comentando Morell el artículo 20 de la Ley Hipotecaria
dice:

"Y lo que decimos de la necesidad de la previa inscripción del
derecho, ha de aplicarse en absoluto, teniendo en cuenta la extensión
y las condiciones con que aparece inscrito. Nemo dat quod non
habet. Todos los casos de aplicación del art. 20 son una fiel repro-
ducción de este principio. Por esto, *él que sólo tiene inscrita la nuda
propiedad, no puede transmitir el dominio;* el que sólo tiene una
participación proindiviso, no puede gravar una porción determinada;
el que posee dos hectáreas de terreno no puede transferir tres, etc."
(Bastardillas nuestras.) 2 Legislación Hipotecaria, 372.

Además, el artículo 866 del Código Civil (Ed. 1930) dis-
pone que "El fiduciario no dispondrá de los bienes fideico-
mitidos en forma contraria o distinta a la establecida en el
fideicomiso." ¿Cuál fué la forma establecida por don Fede-
rico Degetau y González en su testamento y aceptada por
don Bonifacio Sánchez y Giménez en la partición de bienes,

([2]) Dicho artículo, en lo pertinente, lee así:

"Para inscribir o anotar los títulos en que se transfiera o grave el dominio
o la posesión de bienes inmuebles o derechos reales, deberá constar previamente
inscrito o anotado el derecho de la persona que otorgue o en cuyo nombre se
haga la transmisión o gravamen.

"Los Registradores denegarán la inscripción de dichos títulos mientras no
se cumpla este requisito, siendo responsables directamente de los perjuicios que
causen a un tercero por la infracción de este precepto."

en cuanto a la finca Rosa Cruz? Expresamente estableció que: "a la muerte de cualquiera de los dos herederos, se destinará por el superviviente la parte del usufructo del que haya fallecido, *a la creación, sostenimiento o fomento de una institución de cultura o beneficencia en esta Isla de Puerto Rico, como una Biblioteca, Museo, Asilo de Niños Escrofulosos y Raquíticos; creación de una cátedra en el Ateneo de San Juan o a cualquier otro centro de la misma índole en la Isla, o a cualquier otro objeto y objetos de naturaleza semejante que el sobreviviente decidiera. La otra mitad del usufructo de dichos bienes inmuebles, a la muerte del otro heredero, tendrá igual o semejante destino.*" (Bastardillas nuestras.)

En el legado a la Iglesia Católica Apostólica Romana, Diócesis de Ponce, se hace constar que se hace "*para que por el Señor Obispo se disponga de esta parcela de terreno en la forma que crea conveniente.*" (Bastardillas nuestras.) Y en la escritura sobre pago de legado se traspasa la parcela de terreno "Libre de cargas y gravámenes, sin reservas ni limitaciones de clase alguna." No empece la obra cultural o de beneficencia que, sin duda alguna, la Iglesia Católica pueda haber realizado en el pasado y esté realizando en el presente, nada hay en el legado hecho por don Bonifacio Sánchez y Giménez a dicha institución que tienda siquiera a imponerle la obligación de cumplir con el mandato estipulado por don Federico Degetau y González en la cláusula séptima de su testamento. No podemos tomar en consideración la información contenida en el alegato de los recurrentes al efecto de. que la parcela de tres cuerdas legada a la Iglesia colinda con otra finca de dicha institución en la cual habrá de fundarse "la primera Universidad Católica de Puerto Rico . . . . y es para ampliar estas obras, todas de cultura y de beneficencia, que Monseñor Willinger recibe ese legado . . .". Este hecho no aparece ni del testamento de

don Bonifacio Sánchez y Giménez ni de ninguno de los demás documentos que tuvo el Registrador ante su consideración y ya hemos resuelto que los registradores calificarán los documentos presentados a inscripción únicamente por lo que resulte de dichos documentos sin que les sea permitido hacer su calificación en hechos que no aparezcan de los documentos presentados a su consideración ni del registro. *Infanzón y Rodríguez* v. *Registrador*, 24 D.P.R. 141. Tampoco puede el recurrente en un recurso gubernativo suscitar como argumento para la revocación de la nota recurrida cuestiones que no tuvo ante sí el registrador al hacer su calificación. *Sucn. Jiménez* v. *Registrador*, 48 D.P.R. 858; *National City Bank* v. *Registrador*, 46 D.P.R. 82.

En cuanto al legado hecho al Sr. Pedro Sánchez González "como recompensa por su cariño y paciencia en ayudarme y cuidarme con el esmero con que lo ha venido haciendo durante tantos años, y como caridad para que él pueda ayudar a su madre paralítica residente en España," aun cuando el propósito que tuvo en mente don Bonifacio Sánchez y Giménez fué un acto de caridad personal a favor del Sr. Pedro Sánchez González no podemos aceptar que esta actuación de dicho testador como fiduciario que era de los bienes de don Federico Degetau y González cumpla con el fin establecido en la cláusula séptima del testamento.

Arguyen los recurrentes que de acuerdo con las frases finales de dicha cláusula séptima al efecto de que el usufructo de dichos bienes se podía dedicar *"a cualquier otro objeto y objetos de naturaleza semejante que el sobreviviente decidiera,"* (bastardillas nuestras) y que "La otra mitad del usufructo de dichos bienes inmuebles a la muerte del otro heredero tendrá *igual o semejante destino,"* (bastardillas nuestras) don Bonifacio Sánchez y Giménez tenía discreción para hacer los legados a la Iglesia Católica y al Sr. Sánchez en la forma en que los hizo. No estamos conformes con esta interpretación.

La discreción concedida al fiduciario en las frases generales antes mencionadas estaba limitada por la enumeración hecha anteriormente de los fines específicos que tuvo en mente don Federico Degetau y González al constituir el fideicomiso, es decir, la creación, sostenimiento o fomento de una institución de cultura o beneficencia en esta Isla como una Biblioteca, Museo, Asilo de Niños Escrofulosos y Raquíticos o la creación de una cátedra en el Ateneo de San Juan, o a cualquier otro centro de la misma índole en la Isla.

Es más, nada hay en el testamento de don Bonifacio Sánchez Giménez, ni en ninguno de los demás documentos presentados al Registro, que tienda a demostrar que el fiduciario al hacer los legados en cuestión, solicitara la cooperación de alguno de los señores mencionados en el párrafo segundo de la cláusula séptima del testamento de don Federico Degetau y González a quienes éste encargó y solicitó cooperación "para el cumplimiento del propósito de *crear la institución* a que se refiere esta cláusula séptima." (Bastardillas nuestras.) Este segundo párrafo aclara y ratifica, si alguna duda pudiera haber, que la intención primordial de don Federico Degetau y González al establecer el fideicomiso fué que se creara con el usufructo de la finca Rosa Cruz una institución igual a las ya enumeradas o de naturaleza semejante a ellas.

*Somos de opinión que en los legados objeto de este recurso no se cumplió con los fines establecidos en el fideicomiso establecido por don Federico Degetau y González y en su consecuencia que las notas recurridas deben ser confirmadas.*