BANCO DE PONCE, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE MAYAGÜEZ, recurrido.

Núm. 1270.—*Sometido:* Diciembre 1, 1950. *Resuelto:* Enero 31, 1951.

*L. E. Dubón, R. García Cintrón, L. Ríos Algarín* y *J. Pieras, Jr.,* abogados del recurrente; el Registrador recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ emitió la opinión del tribunal.

Según aparece de la escritura de "Hipoteca para Garantizar Pagaré al Portador", otorgada en San Juan el 21 de marzo de 1950 ante el notario Luis Ríos Algarín con el número 21 de su protocolo de ese año—cuya inscripción denegó el Registrador recurrido motivando el presente recurso—el 17 de enero de 1949 Alfredo Cedeño Rodríguez, uno de los comparecientes en dicha escritura, suscribió un pagaré a favor de Arturo Muñoz McCormick, o a su orden, por la suma de $6,552.53 de principal con intereses al tipo de 7 por ciento anual, a vencer el 17 de julio del mismo año.

Dicho pagaré fué a su vez endosado por Muñoz McCormick al Banco de Ponce, otro de los comparecientes en la escritura de referencia, por valor recibido, siendo dicho banco el dueño y tenedor de la obligación de referencia en la fecha del otorgamiento de la mencionada escritura de hipoteca.

Según también aparece de esta última, no habiendo sido pagado el principal de dicha obligación a su vencimiento, el compareciente Cedeño, así como Arturo Muñoz McCormick, endosante del pagaré suscrito el 17 de enero de 1949, suscribieron el mismo día 21 de marzo de 1950, y en sustitución del aludido pagaré, una nueva obligación "a favor del Banco de Ponce, o a su orden", por igual suma de principal, a vencer el 31 de diciembre de 1950. Dicho pagaré fué transcrito a la letra en dicha escritura. El mismo comienza así: "Debemos y pagaremos solidariamente *al portador de la presente, o a su orden* . . . " (Bastardillas nuestras.)

Por la propia escritura número 21 que nos ocupa, y "para garantizar al dueño, portador, tenedor o endosatario de la obligación anteriormente transcrita" el importe del principal de la misma, más intereses al 7 por ciento anual y un crédito adicional de $500 para las costas, gastos y honorarios de abogado en caso de ejecución o reclamación judicial, Cedeño constituyó hipoteca voluntaria sobre una finca de su propiedad que en dicha escritura se describe bajo apartado marcado con la letra A; y como garantía subsidiaria adicional para el caso de que dicha finca no alcanzara a cubrir la totalidad del importe de dicha responsabilidad hipotecaria, constituyó hipoteca con el carácter de subsidiaria sobre otra finca de su propiedad, descrita en dicha escritura bajo apartado marcado con la letra B.

El Registrador denegó "la inscripción de la hipoteca que comprende este documento, con vista de otro complementario, por observarse que existe ambigüedad, confusión y contradicción" entre lo expuesto en el párrafo sexto de la escritura —o sea en el que se consignaba que en sustitución del pagaré

suscrito el 17 de enero de 1949 se había suscrito una nueva obligación el 21 de marzo de 1950 "a favor del Banco de Ponce, o a su orden"—y la obligación misma a que se refería dicho párrafo sexto, transcrita en la escritura—o sea el pagaré al portador suscrito en la fecha indicada por Cedeño y Muñoz McCormick—siéndole imposible determinar si la referida obligación era una nominativa o una al portador, lo que era necesario hacer constar en la inscripción de la hipoteca otorgada en su garantía, con el objeto de darle aviso y conocimiento de su otorgamiento a futuros adquirentes de la finca gravada, a terceros y a los que consultaran los libros del registro en busca de información sobre la titulación y estado o libertad de cargas de las fincas hipotecadas. Consideró el Registrador, además, que era necesario expresar en la inscripción el carácter de la indicada obligación, a los efectos de su cancelación en su día ya que, de ser nominativa, sólo podría cancelarse la hipoteca por el Banco de Ponce o por el endosatario del pagaré, mientras que si era al portador podría ser cancelada por el poseedor o tenedor de la obligación, cualquiera que éste fuera. En su alegato en apoyo de su nota denegatoria sostiene esencialmente iguales puntos de vista.

El recurrente por su parte sostiene que no hay ambigüedad ni confusión en el documento—aunque admite que existe falta de claridad en la redacción del mismo—ya que del texto completo de la escritura surge sin lugar a dudas que se trata de un pagaré *al portador* y que la hipoteca se constituye para garantizar el pago de dicha obligación; y que el hecho de consignarse en el párrafo sexto que el pagaré de 21 de marzo de 1950, en sustitución del anterior de 17 de enero de 1949, se suscribía "a favor del Banco de Ponce, o a su orden", sólo tiene el efecto de indicar el dueño o tenedor del pagaré a la fecha del otorgamiento de dicha escritura, siendo en todo caso la falta de claridad o incongruencia un defecto de forma extrínseca que no justifica la denegatoria de inscripción.

▮▮▮ Creemos que el Registrador tiene razón. En el apartado sexto de la escritura el notario da fe de lo que los comparecientes expusieron: que en la propia fecha del otorgamiento de la escritura se suscribió por Cedeño y Muñoz McCormick "una nueva obligación a favor del Banco de Ponce, o a su orden", para sustituir la anterior suscrita por Cedeño a favor de Muñoz McCormick y endosada por éste a dicho banco. Y da fe también del contenido de dicha obligación, que por su contexto difiere, en su naturaleza, de la que las partes han manifestado haber suscrito. De lo primero surge que la obligación es una nominativa, y de lo segundo que es una al portador. Tal contradicción no es un mero defecto de forma extrínseca, como sostiene el recurrente, pues afecta la naturaleza misma de la obligación principal que se garantiza con la hipoteca cuya inscripción se solicita; y no puede el Registrador suponer que lo correcto en la escritura es la transcripción del pagaré al portador pues el propio recurrente ha manifestado que la obligación fué suscrita *a su favor*, o a su orden. La seguridad y certeza que debe aparecer de los libros del Registro en el estado de la titulación y cargas de fincas inscritas, y de las transacciones que las afecten, no permite que sus asientos descansen en suposiciones o interpretaciones, *Cf. Autoridad de Fuentes Fluviales* v. *Registrador*, 62 D.P.R. 753, debiendo los documentos ser calificados únicamente por lo que resulte de los mismos o del Registro, *Iglesia Católica, etc.* v. *Registrador*, 65 D.P.R. 604. Como bien indica el Registrador, tanto para el conocimiento de los que consulten el Registro como para los fines de la cancelación de la hipoteca en su día, es necesario hacer constar en la inscripción, con certeza, la naturaleza de la obligación para garantizar la cual se constituyó aquélla. Tal certeza no puede llevarla el Registrador a los libros porque no surge del documento presentádole. (¹)

*La nota del Registrador será confirmada.*

---

(¹) El propio recurrente, al ser notificado por el Registrador de los defectos de que a su juicio adolecía la escritura, sostuvo el punto de

vista de que no obstante consignarse en la obligación transcrita en el
párrafo sexto que la misma era una al portador, la misma era una
a favor del Banco de Ponce, o a su orden, y que esto quedaba de mani-
fiesto al comparecer el banco en la escritura y aceptar sus términos.