*1055 TEXTO COMPLETO DE LA SENTENCIA
Marcos Pérez y su esposa, Mercedes Ruiz, (en adelante, el matrimonio Pérez-Ruiz) solicitan la revisión de la Sentencia Parcial emitida el 17 de octubre de 2007 por el Tribunal de Primera Instancia, Sala de Bayamón, mediante la cual se desestimó parcialmente la demanda por ellos presentada al determinarse que actuó correctamente el Registrador de la Propiedad e inscribir una hipoteca antes que una compraventa.
El recurso se encuentra perfeccionado por lo que estamos en posición de resolver. Por recurrir la parte apelante de una sentencia parcial final, acogeremos el recurso como una apelación, manteniendo su denominación alfanumérica. En aras de la economía procesal, no ordenamos cambio alguno en el epígrafe, específicamente en su determinación alfanumérica que determina e identifica este recurso como certiorari en lugar de apelación; ello no enerva cambio sustantivo en la causa del epígrafe.
I
HECHOS
Los hechos en este caso son simples. El matrimonio Pérez-Ruiz y el Sr. Julio Baéz Gorritz y su esposa, María Pérez Hernández (el matrimonio Báez-Pérez), eran dueños cada uno del cincuenta por ciento (50%) del solar marcado con el núm. 4 de la fase III de la Urb. Valle Hacienda de Dorado. El 30 de junio de 2003, el matrimonio Pérez-Ruiz le compró su participación al matrimonio Báez-Pérez, por lo que advinieron únicos dueños del solar.
Sin embargo, el 9 de febrero de 1995, los Báez-Pérez habían otorgado a favor del Banco de Desarrollo Económico de Puerto Rico (BDDE) una hipoteca en garantía de pagaré sobre su entonces participación en el solar; mas, de ello, nunca notificaron a los Pérez-Ruiz. El 4 de febrero de 2004, el BDDE presentó para su inscripción en el Registro de la Propiedad la referida escritura de hipoteca. Veinte (20) días después, los esposos Pérez-Ruiz hicieron lo mismo con la escritura de compraventa otorgada el 30 de junio de 2003. El 12 de noviembre de 2004, la hipoteca fue inscrita como inscripción tercera a favor del Banco y, como inscripción cuarta, fue inscrita la compraventa.
Así las cosas, el 7 de octubre de 2005, el matrimonio Pérez-Ruiz presentó una solicitud de cancelación de asiento hipotecario contra el BDDE y el matrimonio Baéz-Pérez. En la misma, alegaron que el Registrador de la Propiedad de Bayamón erró al inscribir la escritura de hipoteca cuando ya había sido presentada la escritura de compraventa, por lo que éste tenía conocimiento de que la propiedad no pertenecía a los deudores. Así pues, solicitaron al T.P.I. que ordenara al Registrador de la Propiedad de Bayamón a cancelar el asiento de inscripción tercera de la hipoteca que grava el bien inmueble de su propiedad y encuentre a las partes demandadas-apeladas responsables en daños y perjuicios por una cantidad no menor de $100,000, además del pago de honorarios de abogado por temeridad.
Luego de varios trámites procesales de rigor, la parte demandante-apelante, el matrimonio Pérez-Ruiz, presentó una “Moción Solicitando Sentencia Sumaria y/o Desestimación a Tenor con la Regla 39.3 en Relación a Reconvención”, a la cual se opuso la parte demandada-apelada. Aquilatados los argumentos de las partes, el T.P.I. emitió la sentencia parcial apelada, en la cual declaró no ha lugar la solicitud de sentencia sumaria presentada por los demandantes-apelantes. En consecuencia, desestimó la demanda presentada por dicha parte, al determinar que actuó correctamente el Registrador de la Propiedad al inscribir la hipoteca antes que la compraventa. Como fundamento a su decisión, el tribunal a quo, específicamente, indicó lo siguiente:
“Aplicado el derecho antes esbozado a la controversia de autos, resulta forzoso concluir que el Registrador de la Propiedad actuó correctamente al otorgarle rango preferente a la hipoteca presentada por el BDDE. Determinar *1056 lo contrario sería atentar contra el principio de prioridad.”
En el caso de marras, es un hecho incontrovertido que el Banco presentó la escritura pública de hipoteca el 4 de febrero de 2004, mientras que la compraventa fue presentada por los esposos Pérez-Ruiz el 24 de febrero de 2004. En consecuencia, el Registrador actuó correctamente al inscribir la hipoteca antes de la compraventa, toda vez que la inscripción se retrotrae a la fecha de presentación, independientemente de quiénes sean los dueños del inmueble. Pág. 10 del apéndice del recurso.
Luego de que el tribunal a quo denegara a los demandantes-apelantes una solicitud de reconsideración y de determinaciones de hechos adicionales, éstos acuden ante nos mediante el presente recurso, en el que alegan que erró dicho foro al:
“ 1. Dictar sentencia parcial disponiendo la validez de la garantía de hipoteca y de la inscripción de la escritura de hipoteca sobre los bienes poseídos por un tercero, aquí demandantes. Dichos demandantes no son parte de la escritura de hipoteca y desconocían al momento de la compraventa la deuda y la escritura de hipoteca, por no surgir documento de hipoteca presentado al Registro.
El desconocimiento del demandante al momento del otorgamiento de la escritura de compraventa surge por razón de no estar presentada dicha escritura de hipoteca en el Registro de la Propiedad al otorgarse la escritura de compraventa es indicativo que los compradores son terceros regístrales de buena fe.
2. Decidir que el haberse presentado la escritura de hipoteca antes que la escritura de compraventa en el Registro de la Propiedad y ser inscrita la misma valida dicha escritura de hipoteca, cuyo pagaré había vencido al momento de la compraventa y de la presentación al Registro de la misma.
3. Basar su sentencia en el Principio de prioridad y erra al descartar la aplicación de la doctrina de buena fe registral, la cual beneficia a los demandantes y compradores.
4. No decretar el vencimiento y prescripción del pagaré y por tanto al no decretar la invalidez de la hipoteca por ser de calidad accesoria y no aplicar este principio en su sentencia.”
H
DERECHO APLICABLE
1. El asiento de presentación y sus efectos
Nuestro sistema registral se basa en el conjunto de normas que regula la publicidad de los derechos reales sobre bienes inmuebles a través del Registro de la Propiedad. El proceso de inscripción en el Registro de la Propiedad de los títulos, actos y contratos inscribibles inicia con el asiento de presentación. La función primordial del asiento de presentación es establecer el orden cronológico en que se presentaron los actos o derechos inscribibles en el Registro de la Propiedad para así garantizar la máxima "primero en tiempo, primero en derecho" (prior tempore potior hire). Gasolinas PR v. Registrador, 155 D.P.R. 652, 674-675 (2001). El documento conocido como “Minuta de Asiento de Presentación” está íntimamente ligado al principio registral de prioridad o rango. Por virtud de este principio, los actos registrables que primero ingresen al Registro de la: Propiedad gozarán de preferencia —ya sea excluyente o prelativa— sobre cualquier otro acto presentado con posterioridad, aunque el último acto presentado fuese de fecha anterior. Gasolinas PR v. Registrador, supra.
Por ello, el Artículo 53 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A see. 2256, dispone que la fecha de la inscripción de un documento será la fecha de la presentación en el Registro. En específico, dicho artículo establece que:
*1057 “Los títulos inscribibles surtirán efecto en cuanto a terceros desde la fecha de su inscripción. Se considerará como fecha de inscripción para todos los efectos que ésta deba producir, aun para determinar el plazo necesario para la cancelación de asientos, la fecha de la presentación que deberá constar en la inscripción misma.” (Énfasis nuestro.)
De acuerdo a lo anterior, a los efectos de que los títulos inscritos surtan efectos en cuanto a terceros desde su inscripción, la fecha de la presentación será el momento determinante para que esta inscripción sea efectiva, debido a que la inscripción en el Registro produce sus efectos retroactivamente desde el momento específico de la presentación. Gasolinas PR v. Registrador, supra, citando a Roca Sastre, Derecho Hipotecario: fundamentos de la publicidad registral, 8va ed., Barcelona, Ed. Bosch, 1995, pág. 188. Véase, además, Ponce Federal Savings v. Registrador, 105 D.P.R. 486 (1976).
Ahora bien, la constancia escrita del tumo o rango logrado con la presentación de un documento queda preservada en el Registro por el asiento de presentación. Este se trata de un asiento preliminar y temporero que debe ser expedido según el orden en que se vayan presentando los títulos en el Registro. Su propósito es hacer constar de forma precisa el momento o instante exacto de la presentación, de tal forma que se le garantice al presentante su tumo según el orden de llegada. Gasolinas PR v. Registrador, supra. Igualmente, el asiento de presentación sirve de "aviso implícito a todo el mundo hasta que el documento sea realmente inscrito". Flores v. Arroyo, 43 D.P.R. 282, 283 (1932) (En reconsideración).
Lo anterior implica que la mera presentación de un documento inscribible en el Registro tiene el efecto de producir todos los derechos que concede la inscripción, excepto en aquellas circunstancias donde el Registrador se negare a inscribir el acto o derecho presentado. En vista de lo anterior, los derechos o actos que sean presentados en el Registro, si merecen inscribirse, provocan todos los efectos de la inscripción. Flores v. Arroyo, supra, pág. 282.
Del Artículo 53, supra, también surge que los asientos de presentación afectan al tercero que contrata confiado en lo que el Registro publica si dichos actos o derechos son posteriormente inscritos. Ello implica que una persona puede descansar en la seguridad y la certeza de los títulos y cargas que aparecen presentados si con posterioridad el registrador califica los mismos y son inscritos. Rubio Sacarello v. Roig, 84 D.P.R. 344, 355 (1962); Banco de Ponce v. Registrador, 72 D.P.R. 128, 135 (1951).
2. El Tercero Registral
En nuestro ordenamiento jurídico inmobiliario, todo tercero que adquiera de buena fe y a título oneroso, en función de un registro inexacto, algún derecho real inmobiliario de quien en el Registro de la Propiedad aparezca con facultad para transmitirlo, será protegido en su adquisición una vez inscriba su título en el Registro de la Propiedad, si las causas de la inexactitud no surgen clara y expresamente del Registro. Medina v. Medina, 170 D.P.R. 135 (2007).
Este principio de protección jurídica del tercero registral está consagrado en el Artículo 105 de la Ley Hipotecaria y del Registro de la Propiedad, que en lo pertinente dispone:
“A pesar que la inscripción no convalida los actos o contratos que sean nulos con arreglo a las leyes, ni altera las relaciones jurídicas de quienes intervengan como partes en dichos actos o contratos, el tercero que de buena fe y a título oneroso adquiera válidamente algún derecho de persona que en el Registro aparezca con facultad para transmitirlo será mantenido en su adquisición, una vez haya inscrito su derecho, cuando por cualquier razón resulte inexacto el Registro... en virtud de causas que no resulten expresamente del propio Registro, o que existan sobre la finca acciones o titulo de dominio o de otros derechos reales que no estén debidamente inscritos.
*1058 Al respecto ha de entenderse por Registro los asientos relativos a una finca o derecho, no extinguidos según lo dispuesto en [el Art. 127] de esta ley, que se refieran a cargas y gravámenes o a derechos que no sean el que transfiere o grava, además del asiento que publica el derecho del transmitente.
La buena fe del tercero se presume siempre mientras no se prueba que al adquirir conocía la falta de exactitud del Registro.”
[...]”., 30 L.P.R.A. see. 2355.
En virtud de este articulado, el tercero que desee ser acreedor de la protección del Registro tiene que cumplir con cada uno de los requisitos que se establecen. Sobre estos criterios, el Tribunal Supremo ha determinado lo siguiente:
“1. El tercero civil es aquel que no participó en el acto o contrato que ocasionó la inexactitud en el Registro. Banco de Santander v. Rosario Cirino, 126 D.P.R. 591, 604 (1990).
2.Adquirió por negocio jurídico válido. El negocio para ser válido tiene que cumplir con los requisitos de consentimiento, objeto, causa y capacidad de los contratantes según dispone el Código Civil. Banco de Santander v. Rosario Cirino, supra, pág. 607.
3. Adquirió de una persona que tiene su derecho inmobiliario inscrito. Lo importante es que el derecho aparezca en el Registro, "aunque no conste practicada la inscripción a su favor [del transferente] pero si presentado su título adquisitivo y que éste llegue a inscribirse". Banco de Santander v. Rosario Cirino, supra, pág. 608, citando con aprobación a R.M. Roca Sastre, Derecho Hipotecario, 7ma ed., Barcelona, Ed. Bosch, 1979, T.1, pág 724.
4. Debe poseer buena fe al momento de adquirir para ser acreedor de la protección provista por la fe pública registral. La buena fe es el desconocimiento de la inexactitud del Registro. Delgado Rodríguez v. Rivera Siverio, res. 21 de febrero de 2008, 2008 JTS 51 . Es necesario, además, que no tenga conocimiento personal del defecto que produce la nulidad, Mundo v. Fúster, 87 D.P.R. 365, 375 (1963), y que actué con cierto grado de diligencia. Consejo de Tit. C. Parkside v. MGIC Fin. Corp., 128 D.P.R. 538, 558 (1991); Banco de Santander v. Rosario Cirino, supra, pág. 606.
5. El tercero está cobijado por una presunción legal de buena fe. La buena fe se presume siempre mientras no se prueba que al adquirir conocía la falta de exactitud del Registro. El que sostenga lo contrario tiene la carga de probar que el tercero al adquirir conocía la inexactitud del Registro. Consejo de Tit. C. Parkside v. MGIC Fin. Corp., supra, pág. 559; Banco de Santander v. Rosario Cirino, supra, pág. 607
6. La adquisición se efectuó en virtud de un negocio oneroso. El que adquiere a título gratuito sólo poseerá la protección del tercero hipotecario si sus causantes o transferentes son acreedores de tal derecho. Banco de Santander v. Rosario Cirino, supra, pág. 607.
7. Adquirió en función de una información que ocasionó que el Registro sea inexacto. Serrano v. Auxilio Mutuo, 171 D.P.R. _ (2007), 2007 J.T.S. 139. El Registro es inexacto cuando está en desacuerdo con la realidad jurídica extraregistral. Banco de Santander v. Rosario Cirino, supra, pág. 608.
8. Las causas de nulidad o rescisión no constaban clara y expresamente en el Registro. González Silva v. United Fed. Savings, 107 D.P.R. 119, 131 (1978). Las causas deben aparecer de "una manera concreta, terminante, que aleje toda duda, en evitación de peligros y engaños que corra el contratante de buena fe; han de impresionar los sentidos, saltar a la vista, sin necesidad de inferirlas, ni deducirlas”. Rubio Sacarello v. Roig, 84 D.P.R. 344, 356 (1962).
*1059 9. Que no sean de aplicación las excepciones que la Ley Hipotecaria establece.” Medina v. Medina, supra; Banco de Santander v. Rosario Cirino, supra, pág. 609.
Como puede observarse, los requisitos anteriores protegen a todos aquellos que por medio de un negocio jurídico válido adquieran un derecho real confiando en las constancias del Registro de la Propiedad y siempre que las causas de nulidad no surjan expresamente del Registro.
3. La Hipoteca
El contrato de hipoteca, como todo contrato, también requiere para su validez que concurran los elementos esenciales de consentimiento, objeto y causa. Romero v. S.L.G. Reyes, 164 D.P.R. 721 (2005). Sin embargo, la validez del contrato de hipoteca depende, además, de que se cumplan los siguientes requisitos:
“1. que se constituya para asegurar el cumplimiento de una obligación principal;
2. que la cosa hipotecada pertenezca en propiedad al que la hipoteca;
3. que las personas que constituyan la hipoteca tengan la libre disposición de sus bienes o en caso de no tenerla, se hallen legalmente autorizadas para ello; y
4. que la escritura se inscriba en el Registro de la Propiedad.” Art. 1756 del Código Civil, 31 L.P.R.A. see. 5001; Arts. 182 y 188 de la Ley Hipotecaria, supra, secs. 2601 y 2607, respectivamente.
Conforme a lo anterior, la hipoteca presupone la existencia de una obligación por la cual, como regla general, el deudor responde con todos sus bienes presentes y futuros. Por tanto, el acreedor hipotecario tiene el derecho de hacer efectivo su crédito contra todo el patrimonio del deudor y, además, posee un derecho real sobre un bien determinado que responde de la deuda aunque haya pasado a manos de un tercero. Romero v. Reyes Rivera, supra. En otras palabras, el derecho de hipoteca se define como un derecho real que sujeta o vincula lo hipotecado, cualquiera que sea su titular, al poder de exigir eventualmente la realización de su valor en garantía de la efectividad de alguna obligación dineraria. R & G Premier Bank v. Registradora, 158 D.P.R. 241 (2004).
De este modo, el derecho de hipoteca es de carácter accesorio, indivisible, de constitución registral, y grava bienes inmuebles, ajenos y enajenables, que permanecen en posesión del propietario. R & G Premier Bank v. Registradora, supra. Así, pues, el contrato de hipoteca supone la existencia de dos figuras jurídicas: la obligación principal y la hipoteca en sí, que sirve de garantía al acreedor de la primera. No se concibe una hipoteca sin obligación garantizada. Liechty v. Descartes Saurí, 109 D.P.R. 496 (1980).
HI
EXPOSICIÓN Y ANÁLISIS
Por estar íntimamente relacionados los cuatro señalamientos de error planteados por los apelantes, procedemos a discutirlos en conjunto, al igual que éstos lo hicieron.
De los hechos establecidos y no controvertidos por las partes surge que la presentación de la hipoteca en el Registro de la Propiedad se llevó a cabo el 4 de febrero de 2004, mientras que la de la compraventa ocurrió el 24 de febrero de 2004. Debido a que en este caso la compraventa fue presentada 20 días después de la hipoteca, lo único que procedía hacer por parte del Registrador era inscribirlas en el orden en que éstas fueron presentadas, conforme al principio de prioridad.
La preferencia de créditos en el Registro de la Propiedad se rige por el principio cardinal de primero en *1060 tiempo, primero en derecho. En el caso que nos ocupa, quien estuvo primero en tiempo fue el banco apelado; por lo tanto, es el primero en derecho. Como dijéramos anteriormente, se considerará como fecha de inscripción para todos los efectos que ésta deba producir, la fecha de la presentación del documento.
Por otro lado, los apelantes alegan que el conocimiento del BDDE en cuanto al negocio de compraventa de la propiedad hipotecada descarta la aplicación de la doctrina de la buena fe registral a su favor. No tienen razón en su argumento. De los autos surge que a la fecha en que el banco presentó su hipoteca al Registro para inscripción, el matrimonio Baéz-Pérez figuraba como titular registral del inmueble. Somos de la opinión de que el BDDE goza de la protección del Registro y que tiene derecho a hacer valer el gravamen pactado sobre la propiedad. Sabido es que el conocimiento que derrota la buena fe de un tercero registral es aquel de que las constancias del Registro son incorrectas. Banco de Santander v. Rosario Cirino, 126 supra, pág. 607.
En el presente caso, al momento del otorgamiento de la escritura de constitución de hipoteca, no existía discrepancia alguna entre el Registro y la realidad que debiese ser investigada por el BDDE. La parte apelada, en este sentido, efectivamente adquirió su derecho del titular inscrito del inmueble.
A nuestro entender, la dilación del BDDE en presentar su escritura para inscripción no derrota el derecho de dicha parte de poder cobrar su deuda contra la garantía ofrecida por la parte deudora, el matrimonio Báez-Pérez. Lo cierto es que los apelantes otorgaron la escritura de compraventa sobre la propiedad en una fecha posterior a que se constituyera la hipoteca. No vemos cómo el BDDE hubiera podido conocer que la propiedad iba a ser vendida a un tercero con posterioridad al otorgamiento de la hipoteca. Debe recordarse que se presume la buena fe del BDDE, 30 L.P.R.A. see. 2355, y que el peso recae sobre la parte apelante para derrotarla, Banco de Santander v. Rosario Cirino, supra, pág. 607, cosa que en este caso no se ha hecho.
En el presente caso, el matrimonio Báez-Pérez hipotecó la propiedad a favor del BDDE y luego la vendió a los apelantes, el matrimonio Pérez-Ruiz. El BDDE inscribió su derecho en el Registro de la Propiedad primero que los apelantes. En estas circunstancias, opinamos que es el BDDE, no los apelantes, quien tiene derecho a gozar de la protección del Registro, conforme lo dispone el Artículo 105 de la Ley Hipotecaria, supra. Banco de Santander v. Rosario Cirino, supra, pág. 608; Zalduondo v. Iturregui, 83 D.P.R. 1, 35 (1961); Monserrate v. Lopés, 80 D.P.R. 491, 503 (1958).
La norma es que el adquirente de una propiedad hipotecada la adquiere sujeto a dicho gravamen. Calo Rivera v. Reyes, 115 D.P.R. 123, 126 (1984); Vizcarrondo v. Luengo, 63 D.P.R. 202, 207 (1944). Ahora bien, la responsabilidad de los apelantes hacia el BDDE está limitada al inmueble. No habiendo dicha parte retenido el importe de la hipoteca del precio de venta, ni asumido de otro modo el pago de la obligación personal con ella garantizada, los apelantes no se subrogan junto con el matrimonio Baéz-Pérez en el pago de la deuda. Artículo 164 de la Ley Hipotecaria, supra, sec. 2560. Véase, además, Teachers Annuity v. Soc. de Gananciales, 115 D.P.R. 277, 292 (1984); Calo Rivera v. Reyes, supra, pág. 126. Tal y como muy bien lo expresara el tribunal sentenciador en la sentencia aquí apelada, es obligación del banco apelado hacer las gestiones pertinentes para lograr el cobro de la deuda garantizada por la hipoteca otorgada por el matrimonio Baéz-Pérez a su favor.
En resumen, en el caso de epígrafe, el T.P.I. correctamente reconoció el rango de los documentos presentados para inscripción en el Registro, la escritura de hipoteca y la escritura de compraventa, aplicando el principio de prioridad, según el orden cronológico de sus respectivas presentaciones. Concluimos, que no incidió el tribunal a quo en ninguno de los errores señalados por la parte apelante. El T.P.I. determinó correctamente en la sentencia apelada que la hipoteca goza de rango preferente sobre la escritura de compraventa, considerando el carácter compatible de ambos títulos y el orden de presentación de éstos ante el Registro de la Propiedad.
*1061 IV
DICTAMEN
Por los fundamentos antes expuestos, se confirma la sentencia parcial apelada.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones