La Autoridad de Tierras de Puerto Rico, por su Director Ejecutivo Hon. José Acosta Velarde, recurrente, *v.* El Registrador de la Propiedad de Utuado, recurrido.

Núm. 1125.—*Sometido:* Julio 29, 1943. *Resuelto:* Septiembre 23, 1943.

*Francisco A. Arrillaga* y *C. del Toro Fernández,* abogados de la recurrente; el registrador recurrido compareció por escrito.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

Pablo Cabán y su esposa, siendo dueños de una finca rústica de 78.242 cuerdas de superficie inscrita a su nombre en el Registro de la Propiedad de Utuado, segregaron de ella una parcela de 9 cuerdas que vendieron a los Estados Unidos de América. El remanente de la finca, que según el Registro debió constar de 69.242 cuerdas, fué vendido por Cabán y su esposa a la Autoridad de Tierras de Puerto Rico por escritura número 21 de 4 de junio último ante el notario Francisco A. Arrillaga, siendo representada en ese acto la compradora por su director ejecutivo Sr. José Acosta Velarde. En la escritura se consignó que la cabida actual del citado remanente, de acuerdo con mensura practicada por los ingenieros de la Autoridad de Tierras de Puerto Rico era de 70.9506 cuerdas. Presentado el documento al Registro, el Registrador lo inscribió en cuanto a la compraventa, pero sólo en lo que respecta a la cabida de 69.242 cuerdas que constaba del Registro; consignó el defecto subsanable de no haberse acreditado el nombramiento de José Acosta Velarde como director ejecutivo de la Autoridad de Tierras de Puerto Rico, y denegó la inscripción en cuanto al exceso de cabida de 1.7086 cuerdas.

No conforme con la nota, la Autoridad de Tierras de P. R. interpuso el presente recurso gubernativo.

I. La diferencia de cabida entre la expresada en el título y la que resulta del Registro es sólo de 1.7086 cuerdas, cantidad que no alcanza al 20 por ciento de la cabida inscrita. Esa diferencia podría inscribirse sin necesidad de recurrir a un expediente de dominio o posesorio. Para ello precisaría seguir el procedimiento establecido por la jurisprudencia, es decir, practicar una mensura con citación de los dueños colindantes y acreditar tanto la mensura como la citación, acompañando al título una certificación del agrimensor a ese efecto.

El requisito de la citación de colindantes obedece a la necesidad de evitar que propietarios poco escrupulosos fácil-

mente puedan aumentar la cabida verdadera de sus fincas utilizando el Registro como instrumento para defraudar al tercero inocente que contrate con ellos confiado naturalmente en que los asientos del Registro constituyen un reflejo exacto de la verdad.

A este efecto se dijo en el caso de *Muriente* v. *Registrador,* 47 D.P.R. 246, 250:

"Por lo que sepamos, esta corte nunca ha resuelto, aun tratándose de una finca rústica, que una cláusula relativa a la existencia de un exceso específico que se dice haber sido establecido mediante una mensura, sin una certificación de un agrimensor o sin hacerse mención alguna de haberse notificado a los dueños colindantes, sea suficiente para justificar la inscripción de tal exceso."

Y en el de *Pellón* v. *Registrador,* 53 D.P.R. 526, 530, se reiteró:

"No debe a nuestro juicio permitirse la alteración o rectificación de linderos, ni la inscripción del exceso de cabida resultante, aun cuando se trate de una diferencia que no llegue a un 20 por ciento, sin que antes se practique una mensura con citación de los colindantes. Véanse: *Muriente* v. *Registrador,* supra, y *Aboy* v. *Registrador,* supra."

II. Impugnando aquella parte de la nota que califica de defecto subsanable el no haber acreditado la recurrente que José Acosta Velarde sea su Director Ejecutivo, arguye la representación legal de la Autoridad de Tierras que la función del Registrador al calificar es de naturaleza cuasijudicial y consecuentemente debió dicho funcionario tomar conocimiento judicial del nombramiento de José Acosta Velarde para dicho cargo.

Es verdad que el artículo 36 de la Ley de Evidencia, que es el 398 del Código de Enjuiciamiento Civil (ed. 1933), prescribe que los tribunales tomarán conocimiento judicial de la instauración, firmas y sellos oficiales de los principales funcionarios del Gobierno en los departamentos legislativo, ejecutivo y judicial de Puerto Rico y de los Estados Unidos. Pero esa regla de evidencia aplicable por sus propios tér-

minos en los tribunales de justicia, no lo es en los registros de la propiedad cuando de ejercitar la función de calificar se trate. Esa función está regulada por el artículo 18 de la Ley Hipotecaria que expresamente prescribe que "los registradores calificarán bajo su responsabilidad la legalidad de las escrituras en cuya virtud se solicita la inscripción, y la capacidad de los otorgantes *por lo que resulte de las mismas escrituras.*" (Bastardillas nuestras.) El Registrador, al calificar un documento, no resuelve cuestiones de hecho ni aprecia evidencia. Su misión consiste en examinar los documentos auténticos que se le presentan, ya como principal, ya como complementarios, para con lo que de ellos resulte y de los datos o antecedentes que arrojen los asientos del Registro relacionados con el título presentado, determinar si puede legalmente practicarse la inscripción o anotación que se solicita.

Comentando el citado artículo 18 de la Ley Hipotecaria dice Morell:

"¿Cuál fué el pensamiento del legislador al exigir que la calificación se hiciese por lo que resultara de los mismos documentos o escrituras? Indudablemente se quiso evitar que el Registrador juzgase por noticias particulares propias o adquiridas de tercera persona, ya de palabra, ya en virtud de instancias o datos de otros documentos no presentados a inscripción, o de otras oficinas, aun cuando mereciesen fe. La calificación, como expresamente repiten los artículos 18 de la ley y 77 del Reglamento, ha de hacerse por lo que resulte de los documentos presentados, no bastando, por tanto, ni aun la certeza en el Registrador, por circunstancias y aun por justificantes extraños al título, de que no son verdaderos los hechos que se alegan. Para el Registrador no hay más verdad que la que contiene el Registro y lo que contienen los títulos que debe inscribir. (Resolución de 28 de Marzo de 1904.) Aun en el caso de que se haya cometido un delito, si no resulta así del documento, no puede negarse a inscribir sin perjuicio de tomar las medidas que su celo y experiencia le sugieran para evitar las consecuencias de la inscripción. (Resoluciones de 19 de diciembre de 1879 y 21 de octubre de 1893.)" 2 Legislación Hip., 251.

Y Galindo y Escosura, al tomo 2, pág. 10 de su obra "Legislación Hipotecaria", dicen:

"Para nosotros con la frase *por lo que resulte de las escrituras,* sólo quiso la Ley evitar que el Registrador juzgase por noticias particulares, de la capacidad de los otorgantes, y aunque de ciencia propia le constase la inexactitud contenida en el documento, y así lo confirman las Res. de 4 May. de 1883 y 18 Jun. 1898; pero esto no quiere decir que en todo caso el Registrador haya de tener por probada la capacidad de los otorgantes, sólo porque el Notario la afirme. (V. Res. de 30 Mar. 1898, declarando que aunque el Notario afirme que, a su juicio, tiene capacidad un viudo para vender una finca, el Registrador puede y debe estimar no inscribible la escritura, si resulta del Registro que tal finca la adquirió siendo casado, a título oneroso.) *Bastará la afirmación respecto de las circunstancias que determinen la identidad y capacidad de los otorgantes para obrar en nombre propio; mas no respecto de las circunstancias que le revisten de facultades para obrar en nombre ajeno y obligar a terceras personas.* Así, es suficiente que consten en la escritura los nombres, apellidos, edad, estado civil (V. Res. de 24 Feb. 1888), profesión y vecindad de los que otorgan un contrato; porque según el art. 4 de la Inst. de 9 Nov. 1874, debe el Notario expresar todas las circunstancias que sirven para que se justifique la identidad del contrayente y su capacidad para otorgar contratos registrables en nombre propio, según aparezcan de la cédula personal; sobre esto no puede haber apreciación: el Notario no califica, no obra en virtud de raciocinios y deducciones basados en su propio juicio, sino sólo testimoniando hechos consignados en un documento público que le manda admitir la Ley, sin que le sea lícito discutirlos; el Registrador nada tiene que calificar, porque no ha de calificar lo que dice la cédula, ni si lo dice o no, cuando lo afirma el que tiene la fe pública, y está encargado para ello exclusivamente por razón de su oficio." (Bastardillas nuestras.)

Cierto es que en la escritura de compraventa motivo de este recurso el notario transcribió el acta de la Autoridad de Tierras de Puerto Rico por la cual se autorizó a su director ejecutivo a comprar para dicha agencia la finca en cuestión, pero sin duda inadvertidamente se omitió consignar en ella el nombre del director ejecutivo. En tales circunstancias era necesario, para que pudiese contratar a nombre de la Autoridad, acreditar en forma auténtica que

.José Acosta Velarde era quien legalmente ocupaba dicho cargo, sin que fuese suficiente que en la escritura de compraventa, por su exclusiva cuenta, lo dijese el notario autorizante.

La recurrente invoca el caso de *Orcasitas* v. *Registrador*, 21 D.P.R. 553, en el cual se presentó para inscripción una escritura de venta judicial otorgada por Rafael Mas como submárshal de una corte de distrito, y el Registrador consignó el defecto subsanable de no haberse acreditado debidamente que dicho Rafael Mas fuera tal submarshal. Al confirmar la nota recurrida se dijo por este Tribunal:

"El notario no dió ni podía dar fe del conocimiento personal que tuviera de que determinada persona estuviera desempeñando cierto cargo o compareciera con determinado carácter. Un Registrador en Puerto Rico no puede tomar conocimiento judicial de los submarshals de la Corte de Distrito en este caso. Tal vez podría tomar conocimiento judicial del cargo del márshal, pero por lo regular es éste último funcionario quien debe hacer la venta judicial y en los casos en que sea el submárshal el que verifica dicha venta el registrador tiene derecho a exigirle prueba de que es tal submárshal y que acredite su autoridad."

El error que se sufre al hablar de conocimiento judicial del Registrador consiste en confundir el precepto del artículo 36 de la Ley de Evidencia con lo prescrito en el artículo 3 de la Ley Hipotecaria que dice así:

"Para que puedan ser inscritos los títulos expresados en el artículo anterior, deberán estar consignados en escritura pública, ejecutoria o documento auténtico, expedido *por autoridad judicial* o por el Gobierno o sus agentes en la forma que prescriban los reglamentos."

Cuando un secretario de un tribunal expide una copia certificada de una demanda para ser anotada en el Registro de acuerdo con el artículo 91 del Código de Enjuiciamiento Civil, el Registrador practica la anotación sin exigir previamente que el funcionario que expide la certificación acredite su nombramiento y la identidad de su firma. Tampoco exige

tal prueba del márshal que le expide un mandamiento para
que se anote un embargo practicado por él sobre bienes in-
muebles, y finalmente, no se exige esa prueba de cualquier
otro funcionario administrativo que por ley esté autori-
zado a certificar actos o documentos. Al no exigir tal prueba
el Registrador, no es que tome conocimiento judicial de las
firmas y nombramientos de esos funcionarios de conformi-
dad con el artículo 36 de la Ley de Evidencia. Lo que su-
cede es que cada uno de esos documentos constituyen docu-
mentos auténticos de conformidad con el citado artículo 3
de la Ley Hipotecaria y el Registrador viene obligado a
aceptarlos como acepta una escritura pública sin que el no-
tario tenga que acreditar su firma y desempeño legal del
cargo.

Al otorgar una escritura de venta judicial el márshal ne-
cesariamente debe celebrar una subasta y el acta de subasta
que tiene que levantar tiene que ser por él firmada. Esa
acta, una vez firmada por el márshal, constituye un docu-
mento auténtico a tenor de lo prescrito en el artículo 3 de
la Ley Hipotecaria, y como para poder inscribir la escritura
de venta judicial es preciso transcribir en la misma o acom-
pañar separadamente entre otros documentos el acta de su-
basta, es obvio que la firma y desempeño legal del cargo del
márshal constan en documento auténtico, a saber, el acta de
subasta, y la escritura puede ser inscrita de conformidad
con el artículo 3 si cumple con los demás requisitos legales.

El resultado en el caso de *Orcasitas* v. *Registrador*, su-
pra, puede ser o no correcto según que el nombramiento y
desempeño del cargo por parte del alegado funcionario apa-
reciese en alguno de los documentos auténticos que debió el
notario transcribir o acompañar a la escritura de venta
judicial. Pero sea o no correcto el resultado, la doctrina
expuesta en dicho caso es errónea y debe entenderse por
éste revocada.

Por último, el hecho de que el Sr. Acosta Velarde com-
parezca en representación de la compradora y no de los ven-

dedores, no subsana la falta apuntada por el Registrador, por impedirlo el artículo 1211 del Código Civil que dice:

"Ninguno puede contratar a nombre de otro sin estar por éste autorizado o sin que tenga por la ley su representación legal.

"El contrato celebrado a nombre de otro por quien no tenga su autorización o representación legal será nulo, a no ser que lo ratifique la persona a cuyo nombre se otorgue antes de ser revocado por la otra parte contratante."

El citado artículo no establece distinción entre el que contrata a nombre del comprador y el que lo hace en representación del vendedor, y por lo tanto el precepto legal se aplica igualmente tanto en uno como en otro caso.

A nuestro juicio, la nota recurrida en cuanto es motivo de este recurso está bien fundada. *Procede, por lo tanto, su confirmación.*

El Juez Asociado Sr. Snyder no intervino.