CARLOS DURÁN y OTRA, demandantes y recurridos, *v.* NICOLÁS GARCÍA TORRES, ETC., demandados y recurrentes.

Número: 42      Resuelto: 20 de diciembre de 1966

*Rafael S. Fuentes* y *José Pérez Rodríguez,* abogados de los recurrentes; *Benjamín Ortiz,* abogado de los demandantes recurridos.

Sala Segunda integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Santana Becerra, Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Mediante la escritura número 13 de 15 de octubre de 1953 otorgada ante el Notario don Juan J. Ramírez Albite, el demandante-recurrido Carlos Durán adquirió por compra al demandado-recurrente Nicolás García Torres un predio de terreno sito en el barrio Las Cuevas de Trujillo Alto, que para esa fecha constaba inscrito en el Registro de la Propiedad como la finca 1100 de dicho municipio con una cabida superficial de 1489 metros cuadrados. Al procederse a la descripción del inmueble objeto de la compraventa hízose constar que según una mensura practicada la superficie correcta era de 1.75 cuerdas. El precio estipulado fue de $3,500, de cuya suma mil dólares fueron satisfechos en el acto del otorgamiento, aplazándose el pago del remanente por el término de seis meses,

" . . . si dentro de cuyo término los vendedores inician los trámites necesarios para una información de dominio y aseguran la inscripción del resto de la cabida precedentemente descrita, o sea, la cantidad de cinco mil trescientos ochentinueve punto veinte metros cuadrados (5,389.20 m/c) en el Registro de la Propiedad correspondiente.

"Convienen las partes contratantes que el total del precio aplazado devengará intereses al tipo del ocho por ciento (8%) anual durante el término de seis meses a partir de la fecha de este otorgamiento . . . entendiéndose que si al vencerse el plazo convenido de seis meses, los vendedores no han terminado la tramitación de aquellos procedimientos necesarios para lograr la inscripción del resto de la cabida no inscrita, dicho término

de seis meses podrá ser prorrogado por tres meses adicionales, previo acuerdo y consentimiento de las partes otorgantes, sin que durante la prórroga que pueda concederse, ni durante cualquier otro término de tiempo posterior al de los seis meses, vengan los compradores obligados a satisfacer intereses de clase alguna."

Amparándose en que el vendedor García no logró dentro del término de seis meses, o de los tres adicionales, la inscripción registral del exceso de cabida, el comprador Durán en 14 de octubre de 1955, promovió un pleito para que se determinara que por ello estaba liberado de pagar el importe del precio aplazado.([1]) La parte demandada contestó y formuló una reconvención por la suma aplazada y los intereses devengados. Adujo como defensa que el exceso de cabida ya había sido inscrito. El tribunal de instancia favoreció la interpretación que del contrato se propuso por la parte actora y dictó sentencia a su favor. Decidimos revisar.

En esencia lo que se requiere con el presente caso es una interpretación de la intención de las partes. Probablemente en lo único en que convenimos con el tribunal de instancia es en su premisa de que las disposiciones contractuales son ambiguas y que pudieron expresarse con mayor claridad. Sin embargo, la conclusión del juez a quo se funda en disquisiciones sobre la naturaleza de las condiciones—resolutoria y suspensiva—del pacto sobre el precio aplazado, con absoluto desconocimiento de la conducta contemporánea y posterior de las partes según aparece de la prueba y de la interrelación de las dos cláusulas transcritas al comienzo de esta opinión.

Ello nos lleva a hacer un recuento de las gestiones hechas por el vendedor recurrente para lograr la inscripción del exceso de cabida. Para el mes de agosto de 1953, ya se había levantado a sus instancias un plano de mensura de la parcela que arrojó una cabida de 6,609.56 metros cuadrados, equi-

---

([1]) Se acumuló una reclamación de $8,000 por supuestos perjuicios sufridos que fue desestimada por el tribunal de instancia. Contra este pronunciamiento de la sentencia el demandante no recurrió.

valentes a 1.6816 cuerdas. (²) Dentro de los seis meses del contrato, en 30 de diciembre de 1953 obtuvo una relación de los rumbos y distancias de una finca colindante propiedad del señor Frank Zorrilla; en 3 de febrero de 1954 logró la aprobación de otros dos colindantes, Frank Coll Carpintero y Gaspar González; y en 25 de marzo siguiente otorgó un acta de rectificación de cabida—escritura Núm. 27 de 25 de febrero de 1954 ante el Notario José R. Vélez Torres—que fue presentada para inscripción un mes después, extendiéndose por el Registrador en 7 de abril una nota de inscripción que reza "Tomada razón con vista de otro solo en cuanto a la cabida de 1786.80 mc. que incluye el 20% que exige la ley . . . . habiéndose denegado en cuanto a la diferencia de 4,822.76 mc. . . . ." Vemos, pues, cómo el vendedor dentro del término de seis meses había logrado la inscripción de un exceso de 297.80 metros cuadrados, faltándole sólo acreditar mediante la información de dominio correspondiente el exceso de cabida restante. (³) Para lograrlo, inmediatamente acudió a la vía judicial y en 9 de abril inició la tramitación de un expediente de dominio. La Junta de Planificación compareció en 21 de abril mediante escrito señalando que su intervención no era necesaria. (⁴) Los edictos citando los colindantes y los anteriores dueños se publicaron en 26 de abril, 26 de mayo y 27 de junio de 1954, y el término de 60 días para éstos comparecer venció en 26 de agosto. La vista tuvo lugar el 27 de agosto. No es hasta el 8 de marzo de 1955 que el Secretario de Justicia comparece en autos a nombre del Secretario de Obras Públicas—por el Norte, una de las colindancias es la

---

(²) La aparente discrepancia entre esta cabida de 1.6816 cuerdas y la expresada en la escritura de compraventa de 1.75 cuerdas, se explica porque esta última era la que figuraba en los títulos anteriores.

(³) *García* v. *Registrador*, 71 D.P.R. 202 (1950); *Servicio de Acueductos* v. *Registrador*, 70 D.P.R. 232 (1949); *Rodríguez* v. *Registrador*, 68 D.P.R. 668 (1948); *Autoridad de Tierras* v. *Registrador*, 62 D.P.R. 506 (1943).

(⁴) Véase el Art. 24A adicionado a la Ley de Planificación por la Núm. 434 de 14 de mayo de 1951, 23 L.P.R.A. sec. 26.

carretera estatal Núm. 23—informando que no tenía reparo a la solicitud. La resolución acreditando el exceso de 4,822.76 fue dictada en 14 de marzo de 1955. En 12 de julio de 1955 se dictó una resolución enmendada declarando justificado el dominio del exceso a favor de Durán, ([5]) la cual quedó finalmente inscrita en 20 de julio de 1955. Prontamente, en 9 de agosto, Durán hipotecó la parcela en la cual enclavaba una edificación por él construida, para responder de un préstamo de $12,000 de principal y otros créditos accesorios.

La reseña que hemos hecho de todos los trámites y gestiones que culminaron con la inscripción del exceso de cabida revelan a nuestro juicio que el vendedor recurrente actuó con toda la diligencia que era posible dentro de las circunstancias. La interpretación estricta de que el plazo de seis meses fue fijado para que dentro del mismo no sólo se iniciara la información de domino sino que se lograra efectivamente la inscripción del exceso de cabida no es favorecida por la experiencia, ya que los términos que entonces se fijaban por el Art. 395 de la Ley Hipotecaria ([6]) prácticamente consumían el plazo fijado, amén de que el peticionario ningún control

---

([5]) A pesar de que en la resolución original se hizo constar que "tanto el peticionario (García) como los anteriores dueños del exceso de cabida consignado, lo han venido poseyendo en concepto de dueños por más de treinta años, quieta, pública, pacíficamente, de buena fe y sin interrupción de clase alguna", un examen de la prueba practicada en la vista demostraba que este hecho no se acreditó cumplidamente. Aparentemente personas a quienes Durán se acercó para gestionar préstamos con garantía hipotecaria sobre la parcela levantaron el reparo, y por ello, Durán intervino en el procedimiento y en una nueva vista se presentó la prueba sobre el particular, obteniéndose entonces la resolución enmendada de 12 de julio de 1955.

([6]) No fue hasta la aprobación de la Ley Núm. 71 de 18 de junio de 1957 (Leyes, pág. 176), que se dispuso que la publicación de edictos convocando a las personas ignoradas a quienes pudiere perjudicar la inscripción se llevaría a cabo tres veces durante 15 días, y que se redujo de 60 a 40 desde la publicación del último edicto el término para comparecer estos interesados. Véase, *Pietri* v. *Registrador*, 20 D.P.R. 219 (1914) en donde se resolvió que el término de 60 días que se marcaba para la admisión de las pruebas regía igualmente para la citación de las personas ignoradas a quienes perjudicaba la inscripción.

tenía en relación con las comparecencias requeridas de la Junta de Planificación y el Secretario de Obras Públicas. También está reñida con un examen en conjunto de las dos cláusulas citadas que evidentemente estaban interrelacionadas. En su recta interpretación conducen a un resultado más lógico, o sea, que los trámites para lograr la inscripción del exceso tenían que iniciarse dentro de los seis meses y si no se completaban en los tres adicionales "ni durante cualquier otro término posterior al de los seis meses" cesaba mientras tanto la obligación del pago de intereses. Significativo en extremo es que Durán aceptó no haber pagado intereses en ningún momento y que recurre a la acción judicial al ser requerido para el pago del precio aplazado cuando ya se había practicado desde hacía varias semanas la inscripción interesada. Si la intención de las partes era que dentro del plazo fijado se lograra la inscripción era innecesaria la referencia a la iniciación de los trámites; bastaba referirse a que se "asegurara" la misma. En la siguiente cláusula las partes hablan de la "terminación" de los trámites. Además, si el plazo de nueve meses era fijo e inalterable, ¿cómo se explica que las partes, al convenir que no se pagarían intereses durante cierto término hasta la terminación de los procedimientos para lograr la inscripción se refirieran a "durante la prórroga que pueda concederse, *ni durante cualquier otro término posterior al de los seis meses*"? Todo nos lleva a la inescapable conclusión de que la obligación que asumió el vendedor fue la de lograr la inscripción y si para ello tomaba más de seis meses, el comprador quedaba relevado del pago de intereses sobre el precio aplazado por el período en exceso de dichos seis meses.

*En virtud de lo expuesto se revocará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 5 de septiembre de 1958;(⁷) en su lugar se declarará sin lugar la demanda*

---

(⁷) No fue hasta el 10 de marzo de 1964 que se ordenó la preparación de la transcripción de la evidencia; se radicó en 1 de marzo de 1966; el recurso quedó sometido en 7 de agosto, durante el receso de este Tribunal.

*y con lugar la reconvención, y en consecuencia, se condenará al demandante-recurrido a satisfacer al demandado-recurrente el importe del precio aplazado y sus intereses al tipo convenido del 8% anual hasta el total pago, con excepción del período comprendido entre la fecha en que expiró el plazo de seis meses y la de la inscripción del exceso de cabida. Se le impondrá además el pago de las costas, incluyendo las incurridas en la tramitación de este recurso, y $300 para honorarios de abogado.*