PRECIOSAS VISTAS DEL LAGO, INC., recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE SECCIÓN III DE BAYAMÓN, recurrido.

*Número:* O-80-602    *Resuelto:* 31 de marzo de 1981

*Ramos & Latoni,* abogados del recurrente; *Rafael Menéndez Caballero* y *Maretsa Rodríguez Portela,* abogados de la interventora, Administración de Reglamentos y Permisos.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

La planificación científica de los desarrollos urbanos en Puerto Rico, un país con escasa tierra y una gran densidad poblacional, requiere un control preciso a cuyos fines se han hecho pronunciamientos de política pública, se ha legislado y se han adoptado disposiciones regulatorias. La política pública en materia de planificación está hoy expresada en el Art. 4 de la nueva Ley creadora de la Junta de Planificación que es la Núm. 75 aprobada el 24 junio, 1975 (23 L.P.R.A. sec. 62c) como propósito general de "guiar el desarrollo integral de Puerto Rico de modo coordinado, adecuado, económico, el cual, de acuerdo con las actuales y futuras necesidades sociales y los recursos humanos, ambientales, físicos y económicos, hubiere de fomentar en la mejor forma la salud, la seguridad, el orden, la convivencia, la prosperidad, la de-

fensa, la cultura, la solidez económica y el bienestar general de los actuales y futuros habitantes, y aquella eficiencia, economía y bienestar social en el proceso de desarrollo, en la distribución de población, en el uso de las tierras y otros recursos naturales, y en las mejoras públicas que tiendan a crear condiciones favorables para que la sociedad pueda desarrollarse integralmente".

En su Art. 3(k), 23 L.P.R.A. sec. 62b(k), la citada Ley define "lotificación" así:

(k) "Lotificación"—es la división o subdivisión de un solar, predio o parcela de terreno en dos o más partes, para la venta, traspaso, cesión, arrendamiento, donación, usufructo, uso, censo, fideicomiso, división de herencia o comunidad, o para cualquier otra transacción; la constitución de una comunidad de bienes sobre un solar, predio o parcela de terreno, donde se le asignen lotes específicos a los comuneros; así como para la construcción de uno o más edificios; e incluye también urbanización, como hasta ahora se ha usado en la legislación de Puerto Rico, y, además, una mera segregación.

La misma definición de "lotificación" se repite *ad pedem litterae* en el Art. 3(h) de la Ley Orgánica de la Administración de Reglamentos y Permisos que es la Núm. 76 de 24 junio, 1975 (23 L.P.R.A. sec. 71b(h)).

Mediante escritura pública Núm. 18 otorgada en Bayamón el 12 marzo, 1980 ante el notario Sr. Demetrio Luis Latoni, la corporación Preciosas Vistas del Lago, Inc. (Preciosas Vistas) vendió por partes iguales para cada comprador, a Eduvigis Rivera Camacho, soltero; Eliseo Rivera Camacho, casado con María A. Santiago Cotto; y Ángel Caballero González, casado con Natividad Rivera Camacho, un condominio pro indiviso equivalente a 1.7864 cuerda en finca de 27.9657 cuerdas de la que la corporación vendedora dice ser dueña "de la totalidad y/o parte sustancial" ([1]) en el barrio "Ortiz"

---

([1]) La finca está inscrita a favor de la vendedora Preciosas Vistas y otros copropietarios titulares en comunidad.

del término municipal de Toa Alta, por precio de $18,000 del que confiesa recibidos $5,000 quedando el balance $13,000 aplazado para pagarse en cinco años devengando intereses al 9% anual, obligación evidenciada por pagaré para el 12 marzo, 1985 que los compradores garantizan con hipoteca constituida en el propio instrumento público de compraventa con cláusula de aceleración autorizando la ejecución por defecto de pago de dos semestres de intereses y en otras cinco instancias. En lo que concierne a este recurso que plantea la evasión por la corporación vendedora de las disposiciones de Ley y de reglamento que regulan las segregaciones y lotificaciones de terrenos en Puerto Rico, la referida escritura Núm. 18 dispone:

(CLÁUSULAS Y CONDICIONES)

Sexta: Los comparecientes manifiestan que en el día de hoy han suscrito un convenio privado proveyendo el uso por los comparecientes de los bienes que hoy poseen en forma pro-indivisa. LOS COMPRADORES por la presente consienten a que la parte vendedora pueda vender a terceras personas otras participaciones indivisas en el inmueble principal. La parte compradora igualmente consiente a que conjuntamente con sus actuales y futuros condueños solicitará de la Junta de Planificación de Puerto Rico un permiso de lotificación para la división de la comunidad de bienes en la forma indicada en el Anexo "A" que aparece unido al convenio a que se hace referencia en este párrafo, el cual queda por referencia incorporado a esta escritura.

– – – – – – CONDICION RESTRICTIVA DE USO – – – – – –

TERCERO: Con el propósito de asegurar el carácter agrícola y/o residencial de la parcela de terreno objeto de la presente compraventa, acuerdan las partes lo siguiente:

a) La parcela de terreno objeto de la presente compraventa se podrá usar única y exclusivamente para fines agrícolas y/o residenciales.

b) Sin que ello se entienda como una limitación de los usos agrícolas y/o residenciales prohibidos, queda expresamente prohibido el uso de dicha parcela de terreno para cementerios, instituciones para dementes, hoteles y moteles.

c) Queda expresamente prohibido el uso de dicha parcela de

terreno para clubes u organizaciones similares que tengan un fin comercial y queda por tanto, prohibida la construcción de cualquier edificio o estructura en ellos cuyo fin sea dedicarlo a tales propósitos.

Presentada la escritura, el Registrador de la Propiedad denegó su inscripción en la siguiente nota fundamentada:

La finca que se describe en el documento está inscrita a favor de Preciosas Vistas del Lago, Inc., y de otros condómines quienes no comparecieron al otorgamiento de la compraventa e hipoteca aquí constituida *violándose la Ley y el Reglamento de la Administración de Reglamentos y Permisos* y las disposiciones aplicables, de la Ley Hipotecaria en sus Artículos [57 y 68]. (Ley 198 del 8 de agosto de 1979.)

Admitimos la intervención de la Administración de Reglamentos y Permisos (ARPE) que la fundamentó aduciendo la existencia de una práctica lesiva a la política pública de planificación que evade la regulación de las lotificaciones presentándolas como ventas de participaciones indivisas en fincas encaminadas a su desarrollo urbano. En su alegato la agencia interventora trae a nuestra atención en forma documentada que, simultáneamente con la escritura pública de compraventa e hipoteca de condominio pro indiviso, se otorga entre la corporación urbanizadora y sus compradores de tierra un convenio privado en que se lleva a efecto una división en solares(²) que se adjudican con cabida y linderos específicos a los compradores y se procede a la construcción de casas;

---

(²) Uno de los anexos a su alegato es un convenio típico promovido por la recurrente Preciosas Vistas que transcribimos:
"— — — — — — — — — — CONVENIO — — — — — — — — — —
— — — — — — — — — — — COMPARECEN — — — — — — — — — —
— — COMO PRIMERA PARTE: PRECIOSAS VISTAS DEL LAGO, Inc. corporación doméstica con oficina principal en esta ciudad de Bayamón, Puerto Rico, aquí representada por su Tesorero Federico Viejo Simonpietri quien es mayor de edad, casado, propietario y vecino de Bayamón, Puerto Rico.
— — COMO SEGUNDA PARTE: DON RAFAEL GARCIA Y DOÑA DONATILA SIERRA, quienes son mayores de edad, casados entre sí, propietarios y vecinos de Bayamón, Puerto Rico.

que a la edificación siguen trámites de legalización *a posteriori* confrontando a ARPE con el hecho consumado de familias con dinero invertido y ocupando viviendas en núcleos ur-

——————————————— EXPONEN ———————————————

——— PRIMERO: Que por escritura número 29 otorgada el día 12 de abril de 1977 ante el Notario Público don Demetrio Luis Latoni los comparecientes de la segunda PARTE adquieren por compra de la Primera Parte una participación indivisa equivalente a 1.0248 cuerdas en un inmueble que se describe detalladamente en dicha escritura. ————————

—— Como consecuencia de lo anterior, los comparecientes son ahora condómines del referido inmueble en la proporción que a cada uno pertenece y en forma pro-indivisa. ———————————————————

——— SEGUNDO: Los comparecientes declaran y hacen constar que les interesa la posesión, uso y disfrute de una determinada porción de la parcela principal descrita en el referida escritura, y en consideración a ese deseo expreso, los comparecientes acceden a delimitar para su uso la porción a éstos les interesa poseer y disfrutar. ————————————

——— TERCERO: De acuerdo con la expresada voluntad de los comparecientes y conforme con la realidad física de la parcela principal antes mencionada, ahora las partes declaran y convienen que los comparecientes poseerán, usarán y disfrutarán exclusivamente las siguientes porciones de terreno que forman parte de la parcela principal a que se hace referencia anteriormente ————————————————————

—— (a) los comparecientes de la Primera Parte (o sus causahabientes) tendrán la posesión, uso y disfrute de las porciones de terreno marcadas en el plano que como Anexo 'A' se une a este documento haciéndolo formar parte del mismo. ——————————————————————

—— (b) Los comparecientes de la Segunda Parte tendrán la posesión, uso y disfrute de la porción de terreno marcada como Sección 2-C en el referido plano Anexo 'A'. ——————————————————

——— CUARTO: Los comparecientes y sus sucesores en derecho tendrán derecho a poseer, usar y disfrutar individualmente de la porción de terreno antes descrita y que se le ha permitido usar exclusivamente, a título de condueño de la finca principal, con los derechos y obligaciones que dispone el Código Civil de Puerto Rico. ———————————————————

——— QUINTO: Es condición 'sine qua non' para este Convenio la obligación de los comparecientes poseer, usar y disfrutar solamente la porción de terreno cuyo uso se le ha asignado según este Convenio y el Anexo 'A', independientemente de que dicha porción forme parte de la parcela principal. ————————————————————————

——— SEXTO: A los fines de este Convenio, se entenderá entre las partes, sus sucesores en título o causahabientes que los derechos de posesión, uso y disfrute de cada parte aquí compareciente, se limitarán a sus respectivas porciones descritas en el Anexo 'A' según indicado en este Convenio, y no tendrán posesión, uso y disfrute sobre cualquier otra porción de la parcela principal o cualquier parte o porción de dicha parcela. ————

——— SEPTIMO: Cada compareciente podrá vender, ceder, arrendar,

banos sin las facilidades mínimas necesarias y muchas veces en detrimento de terrenos con una superior utilidad y destino agrícola.

En lo referente a la calificación por el Registrador de los documentos presentados para inscripción, la Ley Hipotecaria

---

hipotecar o de cualquier modo lícito disponer de la porción indivisa que de la finca principal le pertenece y podrá inscribir su participación indivisa en el Registro de la Propiedad correspondiente. — — — — — — — — —

— — — OCTAVO: No obstante lo anteriormente expuesto, los comparecientes no podrán vender, ceder, arrendar, hipotecar o de cualquier modo disponer de la porción indivisa que les pertenece sin que su comprador, cesionario, arrendatario o acreedor conozca los términos y condiciones. — —

— — — NOVENO: Los comparecientes conocen y aceptan que este Convenio no puede inscribirse en el Registro de la Propiedad, toda vez que no media el correspondiente permiso de la Junta de Planificación de Puerto Rico para efectuar la segregación de las porciones descritas en el Anexo 'A'. — — — — — — — — — — — — — — — —

— — — DECIMO: La Primera Parte podrá libremente vender o enajenar cualquiera o todas las porciones o participaciones que le corresponden según este Contrato en la forma aquí convenida, para lo cual la Segunda Parte ahora presta su consentimiento. — — — — — — — — — — — —

— — — UNDECIMO: Los comparecientes por la presente consienten entre sí a que cada condómine aquí compareciente y sus sucesores en derecho puedan edificar una casa residencial dentro de cada porción o porciones que se le ha asignado a cada parte, para su uso exclusivo según este Contrato y según aparecen dichas porciones delimitadas en el Anexo 'A'. Cada condómine aquí compareciente queda obligado a otorgar cualquier documento público que en cualquier momento fuere necesario otorgar para que cualquier condómine, si así lo deseare, pueda inscribir en el Registro de la Propiedad la edificación a que se refiere este párrafo. Igualmente cada condómine podrá en su día solicitar permiso de la Junta de Planificación para segregar su porción o participación. — — — — — — — — — —

— — DUODECIMO: Entiende el comprador, compareciente de la Segunda Parte que será de su entera cuenta y cargo el proveer las facilidades de energía eléctrica y agua potable para su uso en la porción de terreno que se le ha asignado ya que no existen tales facilidades.

— — Y PARA QUE ASI CONSTE, los comparecientes suscriben este Contrato hoy día 12 de abril de 1977.

PRECIOSAS VISTAS DEL LAGO, INC (Fdo.)        *Rafael García*

Por (Fdo.)    *Federico Viejo Simonpietri*. (Fdo.)    *Donatila Sierra*

Affidavit Núm. 6619

— — Suscrito ante mí por Federico Viejo Simonpietri en su carácter de Tesorero de Preciosas Vistas del Lago, Inc. ————————————

y por Don Rafael García y Doña Donatila Sierra quienes son de las cir-

de 1893 con austera sobriedad ordenaba en su Art. 18 (30 L.P.R.A. sec. 43) :

Los Registradores calificarán bajo su responsabilidad la legalidad de las escrituras en cuya virtud se solicita la inscripción y la capacidad de los otorgantes, por lo que resulte de las mismas escrituras.

▪ Bajo dicho precepto este Tribunal ha delimitado en múltiples decisiones el ámbito de esta función calificadora que es el medio o instrumento para hacer efectivo el principio de legalidad. Así tiene declarado que el Registrador no puede aplicar las presunciones de Ley de Evidencia ni tomar conocimiento judicial *(Autoridad de Tierras* v. *Registrador,*[3] 62 D.P.R. 506, 509 (1943) ) ; ni muchos menos descansar en suposiciones o interpretaciones *(Banco de Ponce* v. *Registrador*, 72 D.P.R. 128 (1951) ).

▪ La penetración de la facultad calificadora viene siendo objeto de examen desde hace años por los comentaristas del Derecho inmobiliario, contestes todos en que el Regis-

---

cunstancias personales antes expresadas y a quienes doy fe de conocer personalmente en esta ciudad de Bayamón, Puerto Rico, fechaut supra.

(Fdo.) ————————————
Notario Público."

[3] Decidimos: "El Registrador, al calificar un documento, no resuelve cuestiones de hecho ni aprecia evidencia. Su misión consiste en examinar los documentos auténticos que se le presentan, ya como principal, ya como complementarios, para con lo que de ellos resulte y de los datos o antecedentes que arrojen los asientos del Registro relacionados con el título presentado, determinar si puede legalmente practicarse la inscripción o anotación que se solicita."

Y citando de Morell & Terry añadimos que la calificación ha de hacerse por lo que resulte de los documentos presentados, " '. . . no bastando, por tanto, ni aun la certeza en el Registrador, por circunstancias y aún por justificantes extraños al título, de que no son verdaderos los hechos que se alegan. Para el Registrador no hay más verdad que la que contiene el Registro y lo que contienen los títulos que debe inscribir. (Resolución de 28 de Marzo de 1904.) Aun en el caso de que se haya cometido un delito, si no resulta así del documento, no puede negarse a inscribir sin perjuicio de tomar las medidas que su celo y experiencia le sugieran para evitar las consecuencias de la inscripción. (Resoluciones de 19 de diciembre de 1879 y 21 de octubre de 1893.)' 2 Legislación Hip., 251."

trador no es un amable portero sin otra misión que franquear la puerta del Registro al contrato correctamente vestido de documento público. Partiendo de la aclaración de que el Registrador no es un juez, pues indiscutiblemente es un órgano de la Administración del Estado; y que no hay nada en el procedimiento de inscripción y, por tanto, en la calificación registral, que se asemeje a la jurisdicción contenciosa, y mucho que se parece a la jurisdicción voluntaria, cita Roca Sastre a Jerónimo González como sosteniendo que "la jurisdicción voluntaria implica una cooperación de los órganos oficiales para fijar auténticamente un derecho subjetivo de carácter privado, mira a las futuras relaciones jurídicas, tiende a establecer situaciones claras y busca en un procedimiento solemne, y no en la discusión con un contradictor particular, la energía con que impondrá sus declaraciones *erga omnes*". Roca Sastre, *Derecho Hipotecario*, 6ta ed., Ed. Bosch, 1968, T. II, pág. 245. Coincide Roca, reiterando, sin embargo, que la calificación registral no tiene "por objeto *declarar la existencia o inexistencia de un derecho dudoso o contravertido entre partes contendientes*, sino simplemente *publicar*, mediante su inscripción, *un derecho real o situación jurídica inmobiliaria*"; y que en síntesis el fin de la calificación "se reduce a determinar si un título es o no inscribible, y nada más". (⁴)

El Art. 64 de la Ley Hipotecaria de 1979 (30 L.P.R.A. sec. 2267) fortalece y expande, aunque sin desnaturalizarla, la facultad calificadora del Registrador identificándola con dichos criterios de jurisdicción voluntaria, cuando instruye:

Los Registradores calificarán, bajo su responsabilidad la legalidad de los documentos de toda clase en cuya virtud se solicite un asiento. Dicha calificación comprenderá las formas extrínsecas de los documentos presentados, la capacidad de los otorgantes y la validez de los actos y contratos contenidos en tales documentos. Los Registradores fundamentarán su calificación de los actos y contratos a registrarse en los documentos que se presenten, los asientos registrales vigentes y las leyes.

---

(⁴) Énfasis de Roca Sastre, *op. cit.*, T. 2, pág. 249.

.    .    .    .    .    .    .    .

En cualquier caso el Registrador podrá requerir se produzcan los documentos complementarios necesarios para una adecuada calificación, bien sean éstos notariales, judiciales o administrativos.

El documento de compraventa de condominios presentado para inscripción y las constancias obrantes en el Registro con substancial claridad revelan el propósito de ganar acceso al Registro con una lotificación ilegal que no ha sido sometida previamente a la consideración de ARPE como exige el Art. 22 de su Ley Orgánica —Núm. 76 de 24 junio, 1975— 23 L.P.R.A. sec. 71u. Del propio título resulta que vendedora y compradores han suscrito un convenio privado(5) acordando el uso a que se destinan las partes pro indivisas que no es otro que la lotificación y edificación pues hay presentada otra escritura Núm. 46 de 5 septiembre, 1978 ante el notario Sr. Osvaldo Berríos Colón sobre constitución de servidumbre aérea en la que se relata que la corporación recurrente "se propone urbanizar" una finca rústica de 144.1004 cuerdas en los barrios Piñas y Ortiz del municipio de Toa Alta, limitada, como el predio objeto de este recurso, por tierras de Juan Chinea y la carretera estatal; y que dicha urbanizadora constituye servidumbre sobre la finca ya dividida en solares para el paso, operación y mantenimiento de líneas del sistema eléctrico de la Autoridad de las Fuentes Fluviales y para que ésta instale y conserve alambres para suplir energía eléctrica a las edificaciones "sobre cualesquiera de los solares que integran la lotificación" acordándose que la Autoridad permitirá el uso de las fajas en servidumbre a las corporaciones de servicios públicos como teléfono, comunicaciones, acueductos y análogas. Resultando de estos documentos que el predio vendido por la recurrente a unos compradores en comunidad tiene el destino inminente de división en lotes específicos para

---

(5) El Registrador recurrido debió exigir dicho convenio a la recurrente como documento complementario a los fines de calificación. (Art. 64, Ley Hipotecaria, *supra*.)

la construcción de uno o más edificios, la escritura cuya inscripción se pretende es ficción o subterfugio para ganar la protección registral del crédito hipotecario de la vendedora recurrente, a cambio del título oscuro que entrega a sus compradores. "La facultad de calificación del Registrador debe usarse dentro de su ámbito funcional, para negar legitimación registral a actos y contratos artificiosos y para promover la fidelidad óptima en los libros del Registro que acerque su realidad a la externa. . . . La calificación se extiende a toda clase de documentos pertinentes para apreciar la procedencia del asiento, en una conjunción de todos los elementos del título presentado y contenido del Registro." *Empire Life Ins. Co.* v. *Registrador*, 105 D.P.R. 136, 141 (1976).

El título presentado por la recurrente no es inscribible porque contraviene las leyes de planificación del país (Art. 68(5) de la Ley Hipotecaria), y carece de eficacia por incorporar un contrato de lotificación que no ha sido sometido a ARPE, 23 L.P.R.A. sec. 71u.

Para sacar a la luz la simulación que frustra lo ordenado por Ley, el Registrador debe nutrir la calificación con el recurso a la producción de documentos complementarios provisto en el párrafo final del Art. 64 de la Ley Hipotecaria.

*Con estos antecedentes y fundamentos la denegatoria del Registrador es por la presente, confirmada.*

El Juez Asociado Señor Dávila no intervino.