FELIPE HERNÁNDEZ ORTIZ, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE BAYAMÓN, recurrido.

Núm. 1210.—*Sometido:* Mayo 23, 1947. *Resuelto:* Junio 16, 1947.

*Luis Vizcarrondo,* abogado del recurrente; el registrador recurrido compareció por escrito.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

Juan Irizarri Cuadra, dueño de la finca 292 registrada al folio 83 del tomo 7 de Guaynabo, compuesta de 7.27 cuerdas, la hipotecó a Felipe Hernández Ortiz, el recurrente, en garantía de $446.70.([1]) Después de constituída esta hipoteca, Irizarri, por escritura de 25 de diciembre de 1926, segregó de la finca 2.77 cuerdas que vendió a Guillermo Solís, casado con Leandra Hernández. La nueva finca se inscribió con el núm. 310 al folio 161 del tomo 7 de Guaynabo, inscripción primera, el 21 de marzo de 1928. Siendo ya exigible el crédito hipotecario, Felipe Hernández Ortiz, en septiembre de 1928, instó procedimiento ejecutivo en la Corte de Distrito de San Juan contra Juan Irizarri Cuadra, dueño del remanente de la finca 292 y contra Guillermo Solís y Leandra Hernández, como dueños de la finca 310. De conformi-

---

([1]) De los autos no aparece la fecha en que se constituyó la hipoteca, pero fácilmente se concluye que fué antes del 25 de diciembre de 1926.

dad con el artículo 91 del Código de Enjuiciamiento Civil, el 25 de marzo de 1928 se presentó en el Registro de la Propiedad una copia de la demanda siendo anotado el aviso de *lis pendens*, en cuanto a las dos fincas, el 29 de junio de 1928. Guillermo Solís y su esposa vendieron, el 18 de julio de 1928, la finca 310 a Agustín Parson Cruz, casado con Eusebia Arméstica Burgado.

El 14 de julio de 1928, estando pendiente el procedimiento ejecutivo, Felipe Hernández Ortiz cedió el crédito hipotecario a Ramón Luis Soldevilla, siendo inscrita la cesión en el Registro de la Propiedad. No obstante haber cedido su crédito, aparece de los autos que Felipe Hernández Ortiz compareció a la subasta en el procedimiento ejecutivo, siéndole adjudicadas las dos fincas en pago del crédito hipotecario el 4 de octubre de 1928.

En procedimiento de apremio para pagar contribuciones la finca 310 fué adjudicada a Abelardo Martínez Morales, según certificado de 24 de noviembre de 1937, inscrito el 24 de diciembre siguiente, al folio 163 del tomo 7 de Guaynabo, inscripción tercera.

A pesar de haberse adjudicado la finca 310 a Felipe Hernández Ortiz en el procedimiento ejecutivo, al margen de la inscripción tercera aparece una nota en la que se consigna que, en septiembre de 1940,[2] la finca fué redimida por Ramón Luis Soldevilla, como acreedor hipotecario. Sin embargo, la hipoteca que por su procedencia gravaba la finca 310 fué cancelada en cuanto a Hernández Ortiz y a su cesionario Soldevilla, según nota marginal de 24 de marzo de 1939, por haber transcurrido el plazo para la redención de dicha finca. De suerte que cuando Ramón Luis Soldevilla la redi-

---

[2] Nótese que el certificado de venta en el procedimiento de apremio se extendió el 24 de noviembre de 1937, por lo que, al redimirse la finca en septiembre de 1940, había transcurrido más de un año de haberse expedido el certificado de venta.

mió en septiembre de 1940, ya su condición de acreedor hipotecario hacía más de un año que había sido cancelada en el Registro.

Con estas constancias en el Registro, el 3 de julio de 1946 —dieciocho años después de terminado el procedimiento ejecutivo—Felipe Hernández Ortiz solicitó y obtuvo de la Corte de Distrito de San Juan una orden requiriendo a Agustín Parson y a su esposa, como adquirentes *pendente lite,* para que procedieran a liberar la finca 310 en el improrrogable plazo de diez días, a partir del siguiente a la notificación de dicha orden, bajo apercibimiento de que transcurrido dicho término sin cumplir lo ordenado, se mandaría a cancelar la inscripción de su título en el Registro de la Propiedad. Habiendo expirado el término sin que hubieran liberado la finca, el 30 de julio de 1946 se expidió mandamiento al Registrador de la Propiedad de Bayamón para que cancelase la referida inscripción. Presentado el mandamiento en el Registro, fué denegada la cancelación, extendiéndose la nota recurrida, basada en siete motivos los cuales, al radicar su alegato el Registrador, redujo a cinco, pidiendo que se consideraran abandonados los numerados 1 y 4.

Procederemos a discutir conjuntamente los dos primeros motivos. El primer motivo de la nota consta de dos partes: ██ (*a*) En que el aviso de demanda que se anota con arreglo al artículo 91 del Código de Enjuiciamiento Civil, no es la anotación preventiva a que se refiere el artículo 42 de la Ley Hipotecaria[3] y por consiguiente, no debe aplicarse en relación con tal aviso de demanda el procedimiento esta-

---

[3] El artículo 42 de la Ley Hipotecaria prescribe:

"Podrán pedir anotación preventiva de sus respectivos derechos en el Registro público correspondiente:

"1. El que demandare en juicio la propiedad de bienes inmuebles o la constitución, declaración, modificación o extinción de cualquier derecho real.

"2. *       *       *       *       *       *       *       *   *"

blecido por el artículo 71 de la citada ley;[4] y (b) que la finca 310 cuya segunda incripción se ordenó cancelar por dicho mandamiento, fué segregada de la finca principal el 21 de marzo de 1928, mientras que el aviso de demanda fué anotado el 29 de junio del mismo año, o sea, tres meses después de practicada la segregación, por cuya razón la anotación del aviso no puede afectar la porción segregada.

El segundo motivo de denegación es el siguiente:

"Porque el artículo 71 de la Ley Hipotecaria se refiere a enajenaciones hechas durante la pendencia de un litigio, y asumiendo que la liberación que solicitó Felipe Hernández Ortiz lo hubiera sido con respecto a la hipoteca por $446.70 constituída a su favor por Juan Irizarry Cuadra por la inscripción primera de la finca 292 al folio 83 del tomo 7 de Guaynabo, que es la finca de donde fué segregada la número 310 sobre que se ordena la cancelación, resulta que el *procedimiento ejecutivo* en virtud del cual dicha finca número 310 segregada le fué adjudicada a Felipe Hernández Ortiz en venta en pública subasta *se inició en septiembre de 1928, mientras que la segregación y venta de la parcela sobre que se interesa la cancelación se había inscrito ya desde el 21 de marzo de 1928* a virtud de la escritura número 200 otorgada en Río Piedras el 25 de diciembre de 1926 ante el notario José Ruiz de Val, siendo así que cuando el procedimiento ejecutivo se inició ya hacían aproximadamente dos años que la parcela se había segregado y vendido a Guillermo Solís, que fué la per-

---

[4] El art. 71, en lo pertinente, prescribe:

"Si los bienes inmuebles o derechos reales anotados preventivamente, a tenor del artículo 42, números 2 y 3, fuesen adjudicados al demandante en virtud de sentencia recaída en el pleito, o llegase el caso de anunciarlos en pública subasta, se notificará la adjudicación o el anuncio al que durante el litigio hubiese adquirido tales bienes o derechos.

"Dicha notificación deberá practicarse a instancias del actor, dictada que sea la sentencia firme de adjudicación o antes de verificarse el remate en el procedimiento de apremio . . . .

"Hecha la notificación a que se refiere el párrafo anterior, podrá el notificado librar los bienes de que se trate, pagando la cantidad consignada en la anotación para principal y costas, sin que se entienda obligado a satisfacer por este último concepto mayor suma que la consignada en la anotación. Si no lo hiciere en el término de diez días, se procederá a cancelar en el Registro la inscripción de su dominio, así como cualquiera otra que se hubiera extendido después de la anotación, a cuyo efecto, y a instancia del rematante o del adjudicatario, se despachará el oportuno mandamiento al Registrador de la propiedad."

sona de quien adquirió posteriormente Agustín Parson Cruz, por lo que ni Guillermo Solís ni Agustín Parson Cruz fueron adquirentes *pendente lite.*"

Argumentando, en apoyo de la primera parte del primer motivo de su nota, el recurrido empieza por establecer diferencias entre la anotación preventiva de demanda de que trata el artículo 42 de la Ley Hipotecaria y la anotación de aviso de lis pendens, con arreglo al artículo 91 del Código de Enjuiciamiento Civil. No dudamos que existen ciertas diferencias entre ellos, más bien de forma que. de fondo; pero no debemos perder de vista la condición esencial que tienen en común: que una y otro dan aviso de la pendencia del pleito a cualquiera que adquiera el dominio o cualquier derecho real sobre la finca en litigio, colocándolo en la posición de un adquirente pendente lite. Si la anotación de demanda bajo el artículo 91 del Código de Enjuiciamiento Civil ha de ser de alguna utilidad, es necesario que haya un procedimiento para hacer efectivo el derecho que surge de la misma. No existe ese procedimiento en la ley, pero cuando no existe un procedimiento para hacer efectivo un derecho, el artículo 36 del Código de Enjuiciamiento Civil confiere a los tribunales la facultad para adoptar cualquiera que sea adecuado y esté en armonía con el espíritu del Código. Y como el procedimiento provisto en el artículo 71 de la Ley Hipotecaria, a los efectos de hacer efectiva la anotación bajo el artículo 42 de dicha ley, es un remedio adecuado para hacer efectivo el aviso de lis pendens extendido con arreglo al artículo 91 del Código de Enjuiciamiento Civil, y se halla en armonía con el espíritu de dicho Código, no erró la Corte de Distrito de San Juan al aplicarlo a este caso en el procedimiento de liberación.([5])

([5])En relación con este motivo el recurrido discute ampliamente el caso de *Arroyo* v. *Zavala,* 40 D.P.R. 269, tratando de demostrar que la doctrina de ese caso es errónea. No siendo enteramente aplicable dicho caso, toda vez que allí no hubo anotación de lis pendens, no lo discutimos aquí porque sería innecesario a los efectos de esta opinión.

Arguye el recurrido que el procedimiento adecuado está provisto en el artículo 129 de la Ley Hipotecaria. Pero ese artículo, al igual que su concordante el 175 del Reglamento,([6]) contemplan el caso en que los bienes han pasado a manos de un tercer poseedor antes de la celebración de la subasta como lo indica el artículo 128 de la Ley Hipotecaria. Es verdad que Parson adquirió la finca 310 antes de la subasta, pero la aplicación del artículo 129 de la Ley, como lo indica el artículo 175 del Reglamento, sólo tiene lugar cuando lo pide el tercer poseedor, acreditando la inscripción de su título, y en ningún momento Parson solicitó que se entendieran con él las diligencias a que se refiere el artículo 129.([7])

No está acertado el Registrador cuando dice en su alegato que la anotación de lis pendens con arreglo al artículo 91 del Código de Enjuiciamiento Civil, es sencillamente una innovación "indicada a proveer un medio de aviso rápido y sumario hasta que el interesado, si lo desea, pueda practicar su anotación preventiva con las formalidades que señala la ley." No vemos dónde encontró el recurrido esa limitación al artículo 91, el cual, en lo pertinente, prescribe: ". . . Sólo desde el día de la presentación del aviso para ser anotado se considerará que el comprador o la persona que adquiera un

---

([6])Art. 129 de la Ley Hipotecaria:

"Si antes de que el acreedor haga efectivo su derecho sobre la finca hipotecada pasare ésta a manos de un tercer poseedor, se entenderá directamente con éste todas las diligencias prevenidas en el artículo anterior, como subrogado en la personalidad del deudor."

Art. 175 del Reglamento de la Ley Hipotecaria. (Último párrafo):

"Si durante la sustanciación del expediente pasare la finca o alguna de las fincas hipotecadas a manos de otro poseedor, éste, acreditando la inscripción de su título, podrá pedir que se le exhiban los autos en la *Secretaría*, y el juez lo acordará, sin paralizar el curso del expediente, entendiéndose con él las diligencias ulteriores, como subrogado en el lugar del causante."

([7])En una nota al último párrafo del art. 175 del Reglamento, dice Morell en su obra Legislación Hipotecaria de Ultramar, pág. 189:

"*Si el poseedor no lo solicita,* no se entienden ya con él las diligencias, y aunque parezca injusto, no lo es, pues el que adquiere la finca o fincas durante el procedimiento, ni debe ignorar los gravámenes que las afectan, ni extrañarse de lo que resulte de las diligencias judiciales." (Bastardillas nuestras.)

gravamen sobre la propiedad litigiosa, tiene conocimiento, para los efectos legales, de la acción pendiente contra las partes designadas por sus nombres verdaderos.''

La segunda parte del primer motivo de denegación carece en absoluto de mérito. ¿Cómo es posible que un adquirente, después de anotado un aviso de lis pendens, pueda estar exento de sus efectos legales por el mero hecho de que cuando se segregó la finca y la adquirió su predecesor en título, todavía no se hubiera iniciado el procedimiento ejecutivo que dió lugar a la anotación? Al segregarse la parcela de 2.27 cuerdas que pasó a ser la finca 310, dicha finca continuó afecta por su procedencia a la hipoteca constituída sobre la finca principal. Artículo 123 de la Ley Hipotecaria. Por esa razón, al instituirse el procedimiento ejecutivo, fueron demandados Juan Irizarry Cuadra como dueño del remanente de la finca principal y Guillermo Solís y su esposa, entonces dueños de la porción segregada. Se siguieron contra ellos las diligencias prescritas en el artículo 128 de la Ley Hipotecaria y se anotó el aviso de demanda. Parece claro que al adquirir Parson la finca 310 después de iniciado el procedimiento ejecutivo contra su causante y de anotarse la demanda en el Registro, lo hizo con conocimiento del pleito. No habiendo solicitado, de conformidad con el art. 175 del Reglamento, que se entendieran con él las diligencias posteriores como subrogado en el lugar del causante, es de aplicación, por analogía, el procedimiento provisto en el artículo 71 de la Ley Hipotecaria.

Después de discutido el primer motivo de la nota, el segundo no requiere extensa consideración. El Registrador parece olvidarse de que la hipoteca es indivisible, que al pasar a otra persona el título de una parte de la finca, el gravamen sigue sobre la porción segregada; que al instituir el procedimiento se hizo figurar como demandado a Guillermo Solís, quien no podía ser adquirente pendente lite, puesto que él había adquirido antes del pleito; y que habiendo adquirido

Parson la finca 310 después de instituído el procedimiento y anotado el aviso de demanda, era éste un adquirente pendente lite, sin que tenga pertinencia alguna el hecho de que la finca 310 se hubiera segregado antes de instituirse el procedimiento ejecutivo.

El tercer motivo de denegación es el siguiente:

``Porque la nota de aviso de demanda en que fundó el recurrente su procedimiento de liberación fué practicada el 29 de junio de 1929[8] y prescribió cuatro años más tarde según lo dispuesto en el inciso B de la Ley número 12 de 29 de agosto de 1923, según fué enmendada por la número 12 de 25 de junio de 1924, y subsiguientemente enmendada en 9 de julio de 1936 cuando pasó a formar parte del artículo 388 A de la Ley Hipotecaria, por lo que dicho aviso de demanda carecía de eficacia legal para establecerse a virtud del mismo un procedimiento de liberación catorce años después de haber caducado.''

El artículo 388 A de la Ley Hipotecaria, en su apartado (b),[9] autoriza a los registradores de la propiedad, a instancia de parte, autenticada ante notario, a cancelar en el registro, las anotaciones de demanda que tengan más de cuatro años de anotadas, si no hubieren sido prorrogadas por orden de la corte en que pendieren los casos, por justa causa. Pero se observará que dicho precepto legal no dispone que esa anotación caduque a los cuatro años de anotada. Simplemente autoriza al perjudicado por ella, a solicitar su cancela-

---

[8] De conformidad con una certificación expedida por el propio Registrador, con fecha 26 de junio de 1946 y la cual aparece unida a los autos, el aviso de demanda fué anotado el 29 de junio de 1928 y no en junio de 1929, como equivocadamente se consignó en la nota.

[9] Artículo 388 A, apartado (b):

``Los Registradores de la propiedad, *a instancia de parte,* autenticada ante notario procederán a cancelar en el respectivo Registro:

``(b) Las anotaciones de embargo, prohibiciones de enajenar, anotaciones de demanda y cualesquiera otras hechas en virtud de mandamiento judicial que tengan más de cuatro (4) años de anotadas, si no hubieren sido prorrogadas por orden de la corte en que pendieren los casos, por justa causa. Si al entrar en vigor esta Ley hubiere transcurrido en totalidad dicho término o sólo restare del mismo un (1) año o menos, la parte interesada en la anotación tendrá un (1) año desde la vigencia de esta Ley para obtener de la corte competente la prórroga de la anotación.'' (Bastardillas nuestras.)

ción cuando concurran las circunstancias antes expresadas. No es éste el caso de la anotación preventiva practicada al denegarse una inscripción cuya vigencia fija expresamente la ley en 120 días, expirados los cuales, la anotación, aunque no haya sido cancelada, se considera que ha caducado, a menos que se haya recurrido de la misma, en cuyo caso se suspende el término hasta que el Tribunal Supremo resuelva el recurso. Por consiguiente, no estando cancelada la anotación de demanda cuando tuvo lugar el procedimiento de liberación, la validez de dicho procedimiento no fué afectada por el mero hecho de que hubieran transcurrido dieciocho años desde que se extendió la anotación.

El cuarto motivo de denegación dice así:

"Porque por la inscripción tercera de la finca número 310 practicada el 20 de diciembre de 1937 al folio 163 del tomo 7 de Guaynabo se registró a favor de Abelardo Martínez Morales la adjudicación de dicha parcela que le fué hecha en procedimiento de apremio sobre venta de bienes por contribuciones adeudadas, según certificado de venta de 24 de noviembre del mismo año, y si bien al margen de dicha inscripción tercera hay una nota donde se dice que la finca fué redimida por Ramón Luis Soldevilla como acreedor hipotecario en septiembre de 1940, inscribiéndose la redención en 9 de octubre del mismo año, tal nota de redención carece de eficacia legal toda vez que, según otra nota de fecha anterior, o sea de 24 de marzo de 1939 la referida hipoteca que por su procedencia gravaba dicha finca 310 a favor de Ramón Luis Soldevilla como cesionario del crédito de Felipe Hernández Ortiz fué cancelada, en cuanto a dicho Felipe Hernández Ortiz y a su cesionario Ramón Luis Soldevilla, por haber transcurrido el plazo para la redención de la finca, resultando así que la nota de redención puesta año y medio más tarde no podía tener el efecto de producir una redención válida ya que la misma se había hecho por un acreedor cesionario cuyo crédito había sido cancelado en el Registro; y siendo ello así resulta estar en toda su vigencia la inscripción tercera de adjudicación de dicha finca número 310 a favor de Abelardo Martínez Morales, máxime cuando no aparece que dicho titular haya sido notificado de la solicitud de cancelación de acuerdo con lo prescrito en el artículo 71 de la Ley Hipotecaria."

Este motivo de denegación es insostenible. Está basado en la apreciación que hace el recurrido de la legalidad de asientos extendidos en el registro por un predecesor. Tratando de la extensión y limitación de la facultad de calificar, dice Morell:

*"Extensión y límites con relación a los documentos presentados.—* En *general* puede afirmarse que el Registrador tiene atribuciones para calificar toda clase de documentos en cuanto hayan de inscribirse *pero nunca para apreciar la legalidad de los que hayan sido ya registrados, fundándose en su supuesta nulidad para negarse a inscribir. Los asientos extendidos ya en el Registro, han de estimarse válidos en sí y en cuanto al acto inscrito, sean los que fueren los vicios que se observen después, hasta tanto que los Tribunales declaren su nulidad, no pudiendo ser anulados ni discutidos por el Registrador ni por sus superiores jerárquicos."* Morell, Comentarios a la Legislación Hipotecaria, t. 2, págs. 243-4 (ed. 1917). (Segundas bastardillas nuestras.)

En el mismo sentido se ha expresado este Tribunal en los siguientes casos: *Blanco et al.* v. *El Registrador de Caguas,* 27 D.P.R. 961; *Gerena* v. *El Registrador de Humacao,* 26 D.P.R. 87; *Rodríguez* v. *El Registrador de Mayagüez,* 26 D.P.R. 73 y *Sucesión Blanco* v. *El Registrador de la Propiedad,* 16 D.P.R. 67 y *López* v. *Registrador,* 58 D.P.R. 1.

El recurrido invoca el caso últimamente citado como si en efecto sostuviera que un registrador puede pasar sobre la legalidad de asientos extendidos por un predecesor; pero una lectura cuidadosa de dicho caso demuestra que está en armonía con la regla expuesta en los otros casos citados en esta opinión.

El quinto y último motivo de denegación, es el siguiente:

"Porque el procedimiento de liberación se ha establecido a virtud de la adjudicación hecha el 4 de octubre de 1928 a favor de Felipe Hernández Ortiz en el caso civil número 6414 sobre ejecución de hipoteca seguido en la Corte de Distrito de San Juan contra Juan Irizarry Cuadra y otros, y de acuerdo con lo resuelto por el Honorable Tribunal Supremo de Puerto Rico el 28 de enero de 1947 en

el recurso gubernativo número 1197 instado por Felipe Hernández Ortiz contra el Registrador de la Propiedad que suscribe, cuando la finca le fué adjudicada al promovente en aquel caso, en unión de la número 310, ya dicho promovente (que es la misma persona interesada en esta cancelación) le había cedido su crédito a Ramón Luis Soldevilla, por lo que carecía de autoridad para asistir a la subasta y hacerse adjudicar la finca a virtud de un crédito que ya no le pertenecía.''

El motivo que acabamos de transcribir fué resuelto por este Tribunal a favor del Registrador en el recurso núm. 1197, seguido por este recurrente contra el aquí recurrido, en relación con la misma finca objeto del presente recurso. *Hernández* v. *Registrador,* 66 D.P.R. 863, 867. Dijimos entonces:

"No erró, pues, el registrador en el primer motivo expuesto en su nota denegatoria y tampoco en los motivos segundo y tercero ya que, si de la inscripción tercera de la finca en el registro aparece que el recurrente, acreedor ejecutante, había cedido a un tercero su crédito tres meses antes de efectuarse la subasta, el cesionario se había subrogado en todos los derechos del cedente de acuerdo con el artículo 152 de la Ley Hipotecaria y el recurrente no tenía derecho a ejecutar el crédito que había cedido.''

*Por el quinto motivo se confirma la nota recurrida.*[10]

---

[10] Nos hemos visto precisados a discutir los cuatro motivos anteriores ante la probabilidad de que, subsanado el defecto de la subasta, pudieren suscitarse en este caso las mismas cuestiones aquí discutidas.