FELÍCITA GONZÁLEZ SILVA y OTROS, demandantes-recurridos *v.* UNITED FEDERAL SAVINGS AND LOAN ASSOCIATION OF PUERTO RICO, demandada-peticionaria.

*Número:* O-77-102     *Resuelto:* 19 de abril de 1978

*Correa Calzada, Collazo Salazar, Herrero & Lázaro Paoli,* abogados de la peticionaria; *Hartzell, Ydrach, Mellado, Santiago, Pérez & Novas* y *Jorge Bermúdez Torregrosa,* abogados de los recurridos.

*Número:* O-77-102     *Resuelto:* 4 de octubre de 1978

*Hartzell, Ydrach, Mellado, Santiago & Pérez, Jorge Bermúdez Torregrosa,* abogados de los recurridos; *Correa Calzada, Collazo Salazar, Herrero & Lázaro Paoli,* abogados de la peticionaria.

EL JUEZ ASOCIADO SEÑOR TORRES RIGUAL emitió la opinión del Tribunal.

La cuestión que debemos resolver en este caso se refiere al punto de partida para computar el plazo de cuatro años

que establece el Art. 388-A(b) de la Ley Hipotecaria, 30 L.P.R.A. sec. 703(b), para la efectividad de las anotaciones de embargo en el Registro de la Propiedad; específicamente, si el plazo cuadrienal se computa desde la fecha del asiento de presentación del mandamiento de embargo o desde la fecha de su anotación en el Registro. La controversia se desenvuelve dentro de un aparente conflicto entre las disposiciones del mencionado Art. 388-A(b) y el Art. 28 de la misma ley, 30 L.P.R.A. sec. 53, y es, por tanto, una de interpretación estatutaria que llega por primera vez a este Tribunal.

Los hechos que enmarcan la controversia son los siguientes.

El 7 de julio de 1969 José González Silva instó demanda en cobro de dinero contra José Agustín Cuevas y obtuvo anotación de embargo en aseguramiento de sentencia sobre un inmueble de su propiedad. El mandamiento de embargo se presentó al Registro de la Propiedad el 9 de septiembre de 1969 y quedó anotado el 10 de marzo de 1970.

La recurrida Rosa Pérez Cordero advino titular del inmueble embargado en virtud de la liquidación de la sociedad de gananciales que tenía constituida con José Agustín Cuevas. El 18 de octubre de 1973, cuando todavía no habían transcurrido cuatro años desde que el mandamiento de embargo fue anotado, la recurrida Rosa Pérez Cordero presentó instancia al Registrador para la cancelación del embargo, procediendo éste el 7 de noviembre de 1973 a cancelarlo mediante una nota marginal que en lo pertinente lee:

"Cancelado el embargo a favor de José M. González Silva por la suma de Veinticuatro Mil Dólares digo setecientos cuarenta y seis dólares con ochenta y cinco centavos que refiere la adjunta anotación letra A, *por haber transcurrido en exceso el término de cuatro años de haberse presentado en el registro* sin que el mismo haya sido prorrogado y solicitarlo . . . ." (Bastardillas nuestras.)

Cancelado el embargo, la recurrida Pérez Cordero vendió el 26 de diciembre de 1973 el inmueble a los esposos Rivera

Ramírez. La venta fue inscrita el 20 de febrero de 1974 y cinco meses más tarde, el 24 de julio de 1974, los esposos Rivera Ramírez hipotecaron el inmueble para garantizar un préstamo a la peticionaria United Federal Savings and Loan Association of Puerto Rico.

Es de notar que la sucesión de González Silva, demandante en el pleito de cobro de dinero y titulares de la anotación de embargo, nunca solicitaron que la anotación de embargo fuera prorrogada, a pesar de que obtuvieron sentencia a su favor desde el 5 de marzo de 1970.

No obstante, el 2 de agosto de 1974, transcurridos ya cuatro años desde la anotación del embargo, cancelado este, vendido el inmueble e hipotecado a la United Federal Savings, la sucesión de González Silva instó demanda de nulidad de cancelación de anotación de embargo por el fundamento de que la cancelación fue ilegal ya que se computó el plazo de cuatro años desde la fecha del asiento de presentación y no desde la fecha de la anotación.

El tribunal de instancia denegó la desestimación de la demanda solicitada por United Federal Savings por entender que el referido plazo debía computarse desde la fecha de la anotación. No consideró el planteamiento de United Federal de que ella gozaba de la condición de tercero protegido por la publicidad registral.

Expedimos el auto para revisar la cuestión.

Veamos las disposiciones en aparente conflicto. El Art. 388-A(b) de la Ley Hipotecaria, *supra*, dispone en lo pertinente que:

"Los registradores de la propiedad, a instancia de parte, autenticada ante notario procederán a cancelar en el respectivo registro:

(a) . . . . . . . .

(b) Las anotaciones de embargo, prohibiciones de enajenar, anotaciones de demanda y cualesquiera otras hechas en virtud de mandamiento judicial *que tengan más de cuatro (4) años de anotadas,* si no hubieren sido prorrogadas por orden de la corte

en que pendieren los casos, por justa causa . . . ." 30 L.P.R.A. sec. 703(b).

Por otro lado, el Art. 25 de la misma ley dispone:

"Los títulos inscritos no surtirán su efecto en cuanto a tercero sino desde la fecha de la inscripción." 30 L.P.R.A. sec. 50.

Y el Art. 28 prescribe:

"Se considera como fecha de la inscripción para todos los efectos que ésta debe producir, la fecha del asiento de presentación, que deberá constar en la inscripción misma." 30 L.P.R.A. sec. 53.

La peticionaria United Federal Savings sostiene que en virtud del Art. 28 el término de duración de la anotación de embargo debe computarse a partir de la fecha del asiento de presentación y no a partir de la fecha de la anotación. No tiene razón.

■ El plazo de efectividad de las anotaciones preventivas se computa a partir de la fecha de la anotación y no del asiento de presentación. El propio texto del Art. 388-A(b), *supra*, lo indica al expresar que los registradores procederán a cancelar a instancia de parte las anotaciones de embargo "que tengan más de cuatro años de *anotadas*." Ello constituye una excepción a la rigidez cronológica estatuida en el Art. 28 que considera, para todos los efectos que la inscripción pueda producir, la fecha del asiento de presentación. Así lo reconoció desde principio de siglo el Tribunal Supremo de España al resolver que el plazo de nueve días para ejercer la acción de retracto legal establecida por el Art. 1524 del Código Civil Español, equivalente al Art. 1414 de nuestro Código Civil, 31 L.P.R.A. sec. 3924, se cuenta a partir de la inscripción y no de la fecha del asiento de presentación. Véanse sentencias de 11 de junio de 1902, 93 J.C. 949; de 8 de julio de 1906, 105 J.C. 88; de 10 de febrero de 1915, 132 J.C. 403. Una interpretación similar ha impartido la Dirección General de los Registros y del Notariado al Art. 24 de la Ley Hipote-

caria de España, equivalente al mencionado Art. 28, en resolución de fecha más reciente. Resolución de 28 de mayo de 1968, 52 *Revista de Derecho Privado*, 897 (1968).

La doctrina científica también propugna la fecha de la anotación como punto de partida para contar el plazo de efectividad de la anotación preventiva. Al respecto puede verse: Roca Sastre: III *Derecho Hipotecario*, 190 (6ta. Ed. 1968); La Rica y Arenal: *Fecha de los Asientos Registrales*, Vol. 27 *Revista Crítica de Derecho Inmobiliario*, 872, 878–879 (1954); Campuzano: II *Derecho Registral Hipotecario*, 37 (2da. Ed. 1942); Lacruz Berdejo: *Lecciones de Derecho Inmobiliario Registral*, 344 (2da. Ed. 1957); Camy: V *Comentarios a la Legislación Hipotecaria*, 719 (2da. Ed. 1975); Contra: Morell y Terry: *Comentarios a la Legislación Hipotecaria*, 549–550 (1917).

Se ha señalado por la glosa otras excepciones a la norma estatuida por el Art. 28. La Rica menciona, entre otras, las inscripciones de inmatriculación practicadas al amparo de los Arts. 205 y 206 de la Ley Hipotecaria de España que no surten efecto contra tercero hasta transcurridos dos años desde la fecha de la anotación, *op. cit.*, supra, a la pág. 876; la caducidad de las inscripciones de inmatriculación cuyos edictos deben presentarse al Registro dentro de los tres meses siguientes a la fecha de inscripción. *Id;* la caducidad de las inscripciones de hipoteca, cuyo término se computa a partir del vencimiento del crédito y no del asiento de presentación, *Id.* a la pág. 878; la caducidad de la anotación preventiva a favor del legatario que no sea de especie, cuyo término se computa desde la fecha de la anotación, Art. 86 de la Ley Hipotecaria, 30 L.P.R.A. sec. 160; La Rica, *op. cit.*, supra, a la pág. 879; el término de duración de las anotaciones por defectos subsanables que se computa a partir de la fecha de la anotación, Art. 96 de la Ley Hipotecaria, 30 L.P.R.A. sec. 170; la caducidad de las anotaciones preventivas bajo el Art. 96 de la Ley Hipotecaria de España, equivalente al Art. 388-A(b) de

nuestra ley, cuyo término se computa a partir de la fecha del asiento de anotación, Roca Sastre, *op. cit.*, supra, a las págs. 179–180, Lacruz Berdejo, *op. cit.*, supra, a la pág. 344.

Camy expone con claridad y persuación el fundamento doctrinal para computar el plazo de extinción de las anotaciones preventivas desde la fecha de la anotación y no del asiento de presentación:

"Problema más importante en cuanto al plazo de vigencia es el de determinar cuál es el momento inicial del cómputo del mismo; cuestión en la que vamos a repetir ideas que ya expusimos al comentar una decisión de nuestro Centro directivo (pág. 898, año 1968, R. Dcho. P.).

Decíamos que es cierto el que según el artículo 24 de la Ley Hipotecaria se considera como fecha de la inscripción 'para todos los efectos que esta deba producir', la del asiento de presentación; y el término 'inscripción' viene utilizado en ese precepto no en su sentido propio, sino en el genérico de asiento registral principal. Y así, cuando una anotación preventiva se convierta en inscripción, el momento de producción de efectos de este último asiento habrá de retrotraerse a la fecha del asiento de presentación del documento, que originó la anotación que ahora se convierte, y no a cualquier otro posterior o anterior (R. 29 noviembre 1883).

Sin embargo, esa tesis no es cierta en todos los supuestos. Se piensa siempre en los asientos registrales desde el punto de vista de lo que favorece a aquel a cuyo favor se practican, pues esta es la primordial finalidad perseguida por la legislación hipotecaria respecto a los titulares de los derechos de cualquier orden, acogidos a la 'protección' registral; pero no se piensa en lo que el asiento, mejor dicho, en lo que ciertos datos o elementos del asiento pueda perjudicar a ese titular de él, ya que en este aspecto de perjuicio del asiento solo se han desenvuelto los que puedan afectar a personas distintas a aquéllas que como titulares sean favorecidas por los mismos.

*Y si se ha de ser consecuente con la finalidad protectora del titular del asiento que se persigue por toda la legislación hipotecaria, la fecha de él, en cuanto a lo que le beneficie, habrá de ser la más atrasada posible dentro siempre de que se haya cumplido el principio de publicidad, o sea, la del asiento de presenta-*

*ción del título que origine el asiento, o la del que originó el de suspensión convertido en definitivo; en tanto que en lo que aquella fecha del asiento pueda perjudicarle habrá estarse a la más reciente, o sea, a la del asiento mismo y no a la del de presentación o a la del de suspensión, lo cual no es otra cosa que aumentar los beneficios de los asientos registrales.*

Quizás en base a esa idea es por lo que se decía en la resolución que comentamos (R. 28 mayo 1968) que el plazo de vigencia de las anotaciones habría de contarse desde la fecha misma de ese asiento y no del de presentación del documento que las originare o desde la fecha de la anotación de suspensión por defecto subsanable que se hubiere extendido previamente a aquélla. Idea que es también una de las fundamentales de nuestra legislación hipotecaria, pues, por ejemplo, para beneficiar al titular del asiento en los casos en que su vigencia está sometida a un plazo de caducidad, la fecha para iniciar el cómputo de esta (es el caso del recurso), se fija en la del asiento mismo y no en la del de presentación del documento; así el artículo 98 del Reglamento dispone que, el plazo de dos años de vigencia de las inscripciones provisionales a que él se refiere se cuente 'desde la fecha del asiento', y en el artículo 298 del mismo también se indica como fecha inicial para caducidad de las inscripciones de inmatriculación necesitadas de edicto, caducidad debida a no acreditarse la publicación de él, la fecha de la inscripción, y no la fecha desde la que esta inicia sus efectos protectores, o sea, la del asiento de presentación."

La peticionaria arguye, sin embargo, que el término cuadrienal para la cancelación de la anotación no es uno de caducidad y que, por tanto, debe de computarse a partir del asiento de presentación. Es cierto que el *término cuadrienal* del Art. 388-A (b) no es uno de caducidad, *Hernández* v. *Registrador*, 67 D.P.R. 452 (1947), pero la diferencia en la naturaleza del modo de extinción de la anotación preventiva de embargo no altera, ni debe alterar en forma alguna, el punto de partida para su cómputo. En uno u otro caso—extinción por caducidad o por cancelación—se trata de un mismo asiento transitorio de vida limitada, que se extingue por el transcurso del tiempo señalado en el estatuto. En el caso de la caducidad la extinción opera automáticamente, y

a instancia de parte el de la cancelación pero esta diferencia no altera el punto de partida para la computación del plazo de extinción de la anotación preventiva.

La nulidad de la cancelación de la anotación, sin embargo, no dispone por sí misma de los derechos de la peticionaria United Federal Savings. Es preciso considerar si ésta es o no un tercero protegido por la fe pública registral.

United Federal Savings reclama la condición de tercero protegido por la publicidad del registro apoyándose en lo dispuesto por el Art. 34 de la Ley Hipotecaria, 30 L.P.R.A. sec. 59, [1] y lo resuelto en *Rubio Sacarello* v. *Roig*, 84 D.P.R. 344 (1962), a los efectos de que solo afectan a tercero las causas de nulidad que consten claramente en el registro. Los recurridos, por el contrario, rechazan la condición de tercero reclamada por United Federal Savings por el fundamento de que tanto la fecha de la anotación de embargo como la de la cancelación del mismo surgen claramente del registro, razón por la cual, arguyen que la causa de nulidad constaba claramente del mismo.

■ No es necesario que consideremos si la causa de nulidad en este caso surge o no claramente del registro puesto que en nuestro ordenamiento registral la nulidad de la cancelación siempre es sin perjuicio de tercero, conforme lo dispone el propio texto del Art. 99 de la Ley Hipotecaria:

"Podrá declararse nula la cancelación, *mas sin perjuicio de tercero,* conforme a lo dispuesto en la sec. 171 de este título:

1. Cuando se declare falso, nulo o ineficaz el título en cuya virtud se hubiese hecho.

2. Cuando se haya verificado por error o fraude.

---

[1] El Art. 34 de la Ley Hipotecaria dispone en lo pertinente:

"No obstante, lo declarado en la sección anterior, los actos o contratos que se ejecuten u otorguen por persona que en el registro aparezca con derecho para ello no se invalidarán en cuanto a tercero, una vez inscritos, aunque después se anule o resuelva el derecho del otorgante en virtud de título anterior no inscrito o de causas que no resulten claramente del mismo registro."

128

3. Cuando la haya ordenado un juez o tribunal incompetente." 30 L.P.R.A. sec. 173. (Bastardillas nuestras.)

█ La nulidad del embargo en el caso de autos obedece, como ya vimos, a un error de interpretación del estatuto que no puede menoscabar la fe pública registral en perjuicio de la peticionaria United Federal Savings. *Banco de Ponce* v. *Registrador*, 72 D.P.R. 128 (1951).

Incidió, por tanto, el tribunal de instancia al no considerar la condición de tercero de United Federal Savings y, en consecuencia, dictar sentencia sumaria ordenando la desestimación de la demanda en cuanto a ésta.

*Se dictará sentencia revocando la resolución aquí recurrida.*

El Juez Asociado Señor Rigau no intervino.

—O—

EN MOCIÓN DE RECONSIDERACIÓN

San Juan, Puerto Rico, a 4 de octubre de 1978

EL JUEZ ASOCIADO SEÑOR TORRES RIGUAL emitió la opinión del Tribunal.

En nuestra opinión del 19 de abril de 1978 resolvimos en este caso que el plazo de cuatro años que establece el Art. 388-A(b) de la Ley Hipotecaria, 30 L.P.R.A. sec. 703(b), con respecto al término de duración de las anotaciones preventivas se computa desde la fecha de la anotación y no desde la fecha del asiento de presentación del mandamiento de embargo en el Registro.

Concluimos allí que la peticionaria United Federal Savings and Loan Association of Puerto Rico gozaba de la condición de tercero protegido por la fe pública registral con respecto a la cancelación indebida del embargo, pero no consideramos si el haberse computado erróneamente el plazo cuadrienal a partir del asiento de presentación constituía una

causa de nulidad que surgía claramente del Registro, en cuyo caso, no podía considerarse tercero a la peticionaria.

Acogimos por tal motivo la solicitud de reconsideración presentada por los recurridos Felícita González Silva y otros para considerar la cuestión y exponer los fundamentos que sostienen la condición de tercero de la United Federal Savings.

■ Como se sabe, nuestro ordenamiento inmobiliario registral va dirigido específicamente a proteger la posición jurídica del tercero que adquiera un derecho de quien en el registro aparezca con facultad para trasmitirlo, aunque después se anule tal facultad por causas que no consten claramente del Registro. Art. 34, Ley Hipotecaria, 30 L.P.R.A. sec. 59. (¹)

■ La publicidad registral genera la fe pública que garantiza el tráfico inmobiliario al impartirle confiabilidad a los asientos del Registro. Estos se presumen válidos y legítimos hasta que un tribunal declare su nulidad. *Hernández* v. *Registrador*, 67 D.P.R. 452, 463 (1947). En virtud de este principio de legitimación se valida el propósito fundamental de nuestro sistema registral de proteger a terceros adquirentes.

■ La cancelación de la anotación de embargo, por tanto, se presume válida, y, extingue desde luego, en cuanto a tercero la anotación; la deja sin vigor publicitario. El proyecto del nuevo Código Hipotecario proclama expresamente esta presunción en el Art. 123: "Se presumirán extinguidos los derechos contenidos en un asiento cancelado." Los

---

(¹) El Art. 34 de la Ley Hipotecaria dispone en lo pertinente:

"No obstante lo declarado en la sección anterior, los actos o contratos que se ejecuten u otorguen por persona que en el registro aparezca con derecho para ello no se invalidarán en cuanto a tercero, una vez inscritos, aunque después se anule o resuelva el derecho del otorgante en virtud de título anterior no inscrito o de causas que no resulten claramente del mismo registro." Art. 34, sec. 59.

derechos adquiridos pues por un tercero al amparo de un asiento de cancelación no pueden ser afectados, salvo, por supuesto, que posteriormente se anule la cancelación por causas que resulten claramente del Registro. El Art. 97 de la Ley Hipotecaria así lo preceptúa: "La cancelación de las . . . anotaciones preventivas . . . surtirá todos sus efectos en cuanto al tercero que, por efecto de ella, haya adquirido e inscrito algún derecho, aunque después se anule por alguna causa que no resulte claramente del mismo asiento de cancelación." 30 L.P.R.A. sec. 171.

El insigne tratadista Roca Sastre: III *Derecho Hipotecario*, 292, 299 (6ta. ed. 1968), afirma que este efecto extintivo de la cancelación en beneficio de tercero se produce aun cuando la cancelación fuera indebida. Téllez Miguélez es del mismo sentir:

"Es decir, que respecto al tercer adquirente, si reúne los requisitos necesarios para merecer la protección registral, la presunción es 'juris et de jure', propia del principio de fe pública, y el tercero es mantenido en la situación jurídica creada por el Registro, aunque la cancelación hubiere sido efectuada indebidamente . . . ." Téllez Miguélez: *Legislación Hipotecaria*, 168 (Instituto Editorial Reus 1949).

La contención de los recurridos es que precisamente la causa de nulidad de la cancelación de la anotación de embargo surgía claramente del Registro puesto que tanto la fecha de la anotación como la fecha de la cancelación aparecían del Registro. Arguyen que un mero cómputo matemático hubiese indicado que la cancelación era nula por no haber transcurrido el plazo cuadrienal de vigencia. No estamos de acuerdo.

██ United Federal Savings no podía efectuar la computación del plazo cuadrienal porque el punto de partida para el cómputo estaba en controversia. La cuestión requería que se armonizaran varias disposiciones de ley en aparente conflicto, específicamente el Art. 388-A (b) y los Arts. 25 y 28

de la Ley Hipotecaria, 30 L.P.R.A. sec. 703(b) y secs. 50 y 53.(²) Se trata de una cuestión de interpretación de estatuto que sólo un tribunal puede dilucidar en forma definitiva. Por su naturaleza, la controversia requiere conocimientos especializados fuera del alcance de una persona de mediana instrucción. Véase *Rubio Sacarello* v. *Roig*, 84 D.P.R. 344 (1962). A este respecto Barrachina nos dice:

"La causa de nulidad o de rescisión del derecho ha de aparecer claramente del Registro; esto es, ha de ser manifiesta, que no dé lugar a dudas, y como esto es un punto que *á priori* no puede resolverse, precisa dejarlo a la apreciación de los Tribunales de justicia, en caso de contienda." Barrachina: I *Derecho Hipotecario y Notarial,* pág. 251.

■ United Federal Savings no podía tener un claro conocimiento de la causa de nulidad de la cancelación sin una previa determinación judicial de esta controversia. Faltaba pues un elemento esencial para el cómputo sin el cual no podría haber conocimiento de ninguna índole—ni claro ni ambiguo—de la causa de nulidad. Por tal razón gozaba de la condición de tercero protegido por la fe pública registral. Su condición jurídica queda fortalecida por las disposiciones del Art. 99 de la Ley Hipotecaria que, en armonía con el propósito fundamental de nuestro sistema registral, provee

---

(²) El Art. 388-A (b) en lo pertinente dispone:

"Los registradores de la propiedad, a instancia de parte, autenticada ante notario procederán a cancelar en el respectivo registro:

"(a) .⠀⠀.⠀⠀.⠀⠀.⠀⠀.⠀⠀.⠀⠀.⠀⠀.

"(b) Las anotaciones de embargo, prohibiciones de enajenar, anotaciones de demanda y cualesquiera otras hechas en virtud de mandamiento judicial *que tengan más de cuatro (4) años de anotadas,* si no hubieren sido prorrogadas por orden de la corte en que pendieren los casos, por justa causa . . . ." 30 L.P.R.A. sec. 703(b). (Bastardillas nuestras.)

Los Arts. 25 y 28 proveen:

"Los títulos inscritos no surtirán su efecto en cuanto a tercero sino desde la fecha de la inscripción." 30 L.P.R.A. sec. 50.

"Se considera como fecha de la inscripción para todos los efectos que ésta debe producir, la fecha del asiento de presentación, que deberá constar en la inscripción misma." 30 L.P.R.A. sec. 53.

que se podrá declarar nula la cancelación, pero sin perjuicio de tercero cuando se haya verificado por error o fraude.([3]) Y como ya vimos, la nulidad de la cancelación del embargo en este caso obedece a un error de interpretación del estatuto que no puede menoscabar la fe pública registral en perjuicio de la peticionaria United Federal Savings.

*Se dictará sentencia revocando la resolución recurrida y se devolverá el caso para que se continúen los procedimientos en armonía con lo aquí expuesto.*

---

([3]) El Art. 99 de la Ley Hipotecaria provee:

"Podrá declararse nula la cancelación, *mas sin perjuicio de tercero,* conforme a lo dispuesto en la sec. 171 de este título:

"1. Cuando se declare falso, nulo o ineficaz el título en cuya virtud se hubiese hecho.

"2. Cuando se haya verificado por error o fraude.

"3. Cuando la haya ordenado un juez o tribunal incompetente." 30 L.P.R.A. sec. 173. (Bastardillas nuestras.)